SAMUEL STRONG, Respondent, v. THE NATIONAL MECHANICS' BANKING ASSOCIATION, Appellant.

The plaintiff deposited with the defendant certain bonds, as security for loan payable on demand, and subsequently made overdrafts upon his account with the defendant to a large amount. The defendant, learning of such overdrafts and claiming a banker's lien upon the bonds therefor, as well as for the loan, and being unable to give notice or make demand upon the plaintiff, sold the bonds, without any demand or notice, and at private sale. The surplus of avails, after satisfying the loan, was credited upon the overdraft, but afterwards the defendant sold and transferred to a third person the whole amount of such overdraft. The plaintiff, after tender of the amount of the loan and demand of the bonds, sued for the conversion thereof.—*Held*, that the sale of the bonds at private sale was unauthorized, and the plaintiff could elect either to affirm such sale and claim the benefit of the surplus in reduction of his overdraft, or repudiate the sale and credit of surplus and hold the defendant responsible for the bonds; *held*, further, that the plaintiff having repudiated the sale, the defendant's transfer of its claim on account of overdraft precluded it from using any part thereof by way of offset or counter claim, notwithstanding the consideration for such transfer was much less than the amount so overdrawn.

(Argued May 29th; decided June 22d, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the first district, affirming a judgment entered on a verdict directed for the plaintiff.

The action was brought to recover damages for an alleged conversion of certain bonds deposited with the defendant as security for a loan of $15,000. After the bonds were so pledged, the plaintiff overdrew his account with the defendant in one day to the amount of some $53,000. The defendant thereupon made private sale of said bonds, without any demand of payment or notice of sale to the plaintiff, being unable to find the plaintiff for that purpose; entered the amount realized to the credit of the plaintiff, the surplus thereof over and above the amount due upon the loan being credited upon the overdraft. On the same day the defendant, in consideration of about $35,000, sold and assigned to one White, a son-in-law of the plaintiff, its claim against the plain-

tiff by reason of such overdraft, amounting to over $53,000. The amount of the loan and interest was subsequently tendered to the defendant and a demand of the bonds made on behalf of the plaintiff, which was refused. Whereupon this action was commenced. It appeared that one Todd claimed an interest in the bonds, a portion of them having been pledged by him to the plaintiff and his former partner, Hibbard. Mr. Hibbard had retired from the firm and the plaintiff had assumed the whole loan, and kept the subsequent account with the defendant in his individual name. The court directed a verdict for the value of the bonds, less the loan and interest for which they were pledged, and judgment was entered thereon for $4,718.25, with costs.

*William Henry Arnoux*, for the appellant, cited *Davis* v. *Bowsher* (5 T. R., 488); *Collins* v. *Martin* (1 Bos. & Pul., 648); *Wookey* v. *Pole* (4 Barn. & Ald., 1); *Brandas* v. *Barnett* (12 Clark & F., 787); *Kruger* v. *Wilcox* (Ambler, 252); *Barnett* v. *Brandas* (6 Man. & G., 630); *Jones* v. *Peppercome* (1 John., 430); *Bosanquet* v. *Dredman* (1 Stark, 1); *Jourdaine* v. *Lefevre* (1 Esp., 66); *Scott* v. *Franklin* (15 East, 428); *O' Conner* v. *Majoribanks* (4 M. & G., 435); *Ex parte* Steward (3 Mont. D. & D., 265); *Ex parte* Froggatt (id., 322); *Ex parte* Barkworth (2 DeG. & J., 194); *Ex parte* Carrick (id., 208); *Bank of Metropolis* v. *New England Bank* (1 How. U. S., 234); S. C., 6 How. U. S., 212; *Van Amer* v. *Bank of Troy* (8 Barb., 312); 2 Kent, 641; 49 Barb., 203; *Foley* v. *Hill* (2 H. Lds. Cas., Cl. & F., 28); *Pott* v. *Blavait* (8 Scott N. R., 318), on the question of banker's lien and right to sell without demand.

*Noah Davis*, for the respondent, cited *Garlick* v. *James* (12 John., 145); *Stearns* v. *Marsh* (4 Den., 227); *Cortleyou* v. *Lansing* (2 Caine's Cas. in Error, 204); *McLean* v. *Walker* (10 John., 472); *Wilson* v. *Little* (2 N. Y., 443); *Markham* v. *Jaudon* (41 N. Y., 236); *Wheeler* v. *Newbold* (16 N. Y., 392); *Dykes* v. *Allen* (3 Hill, 497); *Tucker* v. *Wilson* (1 Piere Williams, 260); *Romain* v. *Allen* (26 N. Y., 809).

RAPALLO, J.  There was a specific pledge of the bonds by Strong to the bank, for an advance of $15,000, payable on demand.  In addition to this, the bank claims that it had a banker's lien on the bonds for Strong's overdraft of $53,779.89; and it is urged on the part of the appellant, that even if, at the time of the sale, the $15,000 loan was not due for want of a demand of payment, yet the overdraft was due without any demand, and the bank had the right to satisfy that lien. That Strong had absconded, and it being impracticable to give him notice of the time and place of sale, it was lawful to sell without such notice.

Assuming that the banker's lien existed as claimed, it is, to say the least, doubtful whether a mere lien, not created by an express pledge, can be enforced by an extra judicial sale. (*Pothonier* v. *Dawson*, Holt, N. P., 385 ; 2 Kent, 642.)  And the proposition that the inability of a pledgee or lienor to make a demand and give notice of the time and place of sale, entitles him to sell without such demand or notice, and without judicial proceedings, is not sustained by the authorities.  (*Cortelyou* v. *Lansing*, 2 Caine's Cas., 201; *Garlick* v. *James*, 12 Johns. R., 150; *Stearns* v. *Marsh*, 4 Den., 227; Story on Bailments, §§ 309, 310).  But even if the positions of the appellant in these respects could be maintained, the further objection remains, that the bonds were sold at private sale.  Even if demand and notice could be dispensed with, a private sale in such a case cannot be sustained, unless the parties have stipulated for such a sale.  (*Dykers* v. *Allen*, 7 Hill, 497; *Wheeler* v. *Newbould*, 16 N. Y., 392 ; *Willoughby* v. *Comstock*, 3 Hill, 389.)

Immediately after the sale of the bonds, the bank sold and transferred its entire claim for the overdraft to White.  At the time of consummating this sale, the bank attempted to reduce the amount of the overdraft by the credit of the surplus, which the bonds had produced over the amount loaned thereon, and to assign only the residue of the overdraft.  But White objected to this reduction, and insisted upon having the whole amount of the overdraft assigned to him

The bank yielded to this demand, and thus withdrew the partial credit it had made against the overdraft, and transferred the whole amount of the overdraft to White without reduction. The sale of the bonds having been unauthorized, Strong had the right, on becoming informed of it, to elect whether to ratify it and claim the benefit of the surplus in reduction of the overdraft, or to repudiate the sale and the credit of the surplus, and hold the bank responsible for the bonds. He made the election, and disaffirmed the sale, thereby rejecting the proposed credit on account of the overdraft. The result of this was to leave him indebted in the full amount of the overdraft, and to preserve intact his claim to the bonds. White, as the assignee of the bank, was thus vested with a right of action against Strong for the whole amount of the overdraft, and Strong, having rejected the sale of the bonds and the credit, precluded himself from setting up this credit against White, should he bring an action for the recovery of the overdraft.

It is true that the bank failed to obtain payment in full of the indebtedness of Strong. It sold its claim of $53,779.89 for the sum of $34,787.50. It voluntarily sacrificed the difference between these two sums, rather than incur the hazard of a greater loss.

It appears that White was not willing to purchase part of the claim, but insisted on having the whole, and by assigning the whole the bank obtained $34,000. The bank therefore had the benefit of the sale to White, on the whole claim for the overdraft, and although it sold this claim for less than its face, it should not be permitted to make a double use of any portion of it. Its rights are the same in this respect as though it had sold the claim for its full face.

By this sale and transfer the bank rendered Strong (unless he chose to ratify the sale by the bank) responsible to White for the full amount assigned to him, and debarred itself from using any part of the assigned claim as an offset against its liability to Strong on the bond transaction.

Strong might have ratified the sale of the bonds and the credit given for the surplus, and in that event would have been entitled, even as against White, to insist upon the credit resulting from such sale, inasmuch as White took, subject to all equities.

But the sale having been unauthorized, the bank having, by its dealing with White, revoked the credit made in reduction of the overdraft, and Strong having, as he had the right to do, repudiated the sale of the bonds, and thus disclaimed the credit of the proceeds, he remained liable to White for the full amount of the overdraft, and was entitled to demand of the bank the bonds or their value, on paying the $15,000 and interest for which they had been pledged.

There is no exception which raises any question as to the time as of which the value of the bonds should have been computed for the purpose of assessing the plaintiff's damages.

The interest of Todd in the bonds cannot avail the defendant. Nine thousand five hundred dollars of the bonds were pledged by Todd to Strong and Hibbard, who in turn pledged them with others to the bank. Todd consented to the transfer of this account to Strong. Strong thus became entitled to redeem the bonds from the bank, and so long as the advance which had been made to Todd remained unpaid, was entitled to hold the bonds of Todd as security for that advance. Strong had a special property in the bonds, which entitled him to maintain the action. No defect of parties is set up in the answer. The judgment should be affirmed with costs.

All concur.

Judgment affirmed.