(73 App. Div. 473.)

TREADWELL v. CLARK et al.

(Supreme Court, Appellate Division, First Department. June 20, 1902.)

1. STOCK—TRANSFER BY PLEDGEE—SUIT TO REDEEM—RIGHT TO EQUITABLE RELIEF.

A certificate of stock was pledged by plaintiff with an agent to secure a debt to the principal, and through the agent the stock was transferred at private sale without the knowledge of the plaintiff, and a new certificate issued to the final transferee. Held, that plaintiff could bring a suit in equity against the agent, principal corporation, and final transferee, seeking to redeem and to recover the stock and dividends; his remedy by replevin or by suit for the value of the stock being inadequate.

2. SAME—NOTICE TO TRANSFEREE—EVIDENCE.

Where a transferee of stock pledged by plaintiff, and wrongfully transferred by the pledgee, received from his transferror a letter stating that the stock had been pledged by plaintiff, and the transfers were so unusual (being in the form of indorsements pasted on the back of the certificate, some not witnessed) that the president of the company sought out plaintiff to ask about it, the facts showed notice of plaintiff's claim.

3. SAME—LIMITATIONS.

Where a pledgee of stock wrongfully transferred the same, and a transferee, against the pledgor's protest, surrendered the certificates and caused new ones to be issued, and a dispute as to the amount of the account secured existed, so that a suit in equity was the only adequate remedy for plaintiff, the cause was governed by the 10-year

statute of limitations, which commenced to run when plaintiff learned the defendant had possession of the stock.

4. SAME—LACHES.

Plaintiff pledged stock to secure an account, and five years thereafter, the pledge not having been redeemed, the pledgee wrongfully sold the stock. Plaintiff, learning that the stock was in the hands of defendant, immediately notified him of his claim, and the next month notified him again personally, and six years thereafter sued to redeem. *Held*, that he was not barred by laches.

Ingraham, J., dissenting.

Appeal from special term.

Action by George A. Treadwell against William Clark and others. From a judgment for defendants, plaintiff appeals. Reversed.

The action is one brought in equity to recover possession, or else the value, of a certificate for 100 shares of stock of the United Verde Copper Company, which had been pledged in London, England, with one Thomas, as agent for E. Bennett, a tea merchant, as security for an account, but which, through private and unauthorized transfers, has come into the hands of the defendant Clark; to have the amount of the account determined, that it may be paid; and to have an accounting of dividends earned on the stock, but paid to defendants instead of to the plaintiff. The complaint avers that the certificate was pledged March 7, 1888, and that on October 17, 1888, the amount due was about £50. 18s.; that about January 1, 1889, "the said Charles E. Thomas, defendant, contrary to the terms of said pledge, and in violation thereof, and without authority, and through negligence, want of care, or indifference of the defendant E. Bennett, took said certificate of stock into his own possession," came to the United States, and in Arizona, in 1893, attempted to sell it to defendant Burgess, who acquired it knowing that said Thomas had no authority to sell the same; that Burgess in June, 1893, attempted to sell it to the defendant Clark, who acquired it with full knowledge of all the circumstances; that the plaintiff first learned of the attempted transfers in July, 1893, by an officer of the defendant company, and immediately repudiated them, and notified him that it was subject only to the pledge, which was far less than the value of the stock; that in August, 1893, the plaintiff personally notified defendant Clark of the real ownership of the certificate, and demanded it, but nevertheless said defendant caused the shares to be transferred to himself on the books of the company, and has since claimed title thereto and received dividends thereon; that "the plaintiff desires to redeem said stock from the said defendant E. Bennett by the payment of the balance due on his account, and desires to recover said stock and the dividends, * * * and here and now tenders to the said defendant E. Bennett the said balance, * * * to wit, the sum of £50. 18s., with interest, * * * or any larger sum which may be found to be due, * * * and upon such payment being made * * * the said stock should be adjudged to be his [plaintiff's] property, and that he should recover the same and all dividends, * * * and, in case said corporation be dissolved, that he should recover the said dividends from the defendant William A. Clark, with interest, and should further be entitled to participate as a stockholder in the proceeds of any sale * * * of the defendant company." The defendant Clark and the United Verde Copper Company answered, alleging that the plaintiff had parted with the stock absolutely by transfer to Thomas, and that it came into the possession and ownership of Clark "on or about June 22, 1893," without notice of any claim of plaintiff upon it, and it was only thereafter, on August 16, 1893, that plaintiff notified them of his claim, and that the six and ten year statutes of limitations are a bar to the action. Upon the opening, defendants moved to dismiss the complaint on the ground that it does not state a cause of action in equity or in law; that it appears that the remedy at law is adequate, but there is no allegation of tender, which is a prerequisite to such an action. The motion was denied, with leave to renew. The plaintiff then showed,.

by a receipt dated March 7, 1888, and signed by Thomas, that the certificate of 100 shares was received "as security on account"; the same being indorsed, "George A. Treadwell." A billhead dated October 5, 1888, shows that the account then amounted to something over £108; and a receipt dated October 13th, that plaintiff paid the sum of £50. The plaintiff testified that after Thomas came to Arizona he frequently heard from him, and there appears in evidence a letter to plaintiff from Thomas in which the latter says: "Another thing which is a source of worry to me is that £75.10.3., which balance I still owe Mr. Bennett to this day. Would it be too much to ask you to what extent you could lessen that a/c, as I am sure I cannot for some time to come yet? I have given him security to cover it before coming over here." The plaintiff further testified that there was a difference between him and Thomas as to the amount that was due, and therefore he did not pay the pledge. Between 1890 and 1893 the plaintiff received dividends, which were then beginning to be paid. On June 22, 1893, Mr. McDonald, vice president of defendant company, called to see plaintiff, who then went to him, and was told that the certificate had come into the office, and he replied that he had never transferred it; and Mr. McDonald referred him to Mr. Clark, who was then absent. The plaintiff testified that he saw Mr. Clark in August, and demanded the certificate, telling him that it had been pledged, and he had a right to redeem it; and Mr. Clark asked why the amount had not been paid, and he said there was a difference in amounts, and Mr. Clark said, "I will take my chances in holding the stock." That on the afternoon of that day (August 16, 1893) both he and his attorney called on Mr. Clark and demanded the stock, and Mr. Clark showed them the certificate, on which had been pasted assignments from Thomas to Burgess, and from Burgess to Clark, and read to them a letter he had received from Burgess, giving the true and complete history of the stock from the time it was pledged. The plaintiff's attorney testifies that this letter, Mr. Clark said, was dated June 16th, and that the assignment to him was June 22, 1893, and that Mr. Clark insisted that the stock belonged to him, and he then notified the defendant company, as well as Mr. Clark, by letter, of the plaintiff's claim. On September 16, 1893, the 100 shares were transferred on the books of the company to Mr. Clark, and nothing further was done until this action was commenced, November 9, 1899, excepting that plaintiff's attorney on December 26, 1893, wrote to Mr. Thomas of the matter, receiving no reply other than the registry receipt. There are in evidence letters written by plaintiff to Mr. Clark after August, 1893, wherein no mention is made of any claim, and which are of cordial tenor. There is other evidence in the case showing that Mr. Clark was president of the defendant company, and the largest owner, and that the stock has greatly increased in value, so that the 100 shares are now said to be worth $30,000, and the dividends have proportionately increased. In September, 1899, it appears, the company filed papers for a voluntary dissolution. The court dismissed the complaint, saying that the laches of the plaintiff were gross and not excused; that he knew the sum due to Bennett, the value of the stock, and the dividends; that there was no tender, and the offer of tender was not sufficient, and no ground of action was made out. From the judgment so entered, the plaintiff appeals.

Argued before O'BRIEN, HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Charles E. Demond, for appellant.
Henry C. Atwater, for respondents.

O'BRIEN, J. The three principal questions presented are (1) whether the plaintiff is entitled to equitable relief in his action as brought; (2) whether the defendants had notice of the claim of the plaintiff when the stock was transferred to them; and (3) whether the suit is barred by the statute of limitations.

It will be noticed that the complaint alleges that the defendant Thomas came into possession of the certificate wrongfully, by taking it through negligence, etc., of Bennett, whereas the inference from the evidence would be that Bennett had disapproved of the stock as security, and required Thomas to replace it by other security of his own, and passed over to Thomas the stock certificate, and the right to receive from the plaintiff payment of the account. In this action, however, Bennett, Thomas, the subsequent transferees, and the company itself, by whose act the new certificate was issued after notice of plaintiff's claim, are all joined as parties; and, if the suit is properly in equity, the various rights may be determined as they appear. The gravamen of the complaint is that the plaintiff is entitled to possession of the 100 shares, a new certificate therefor, or the value thereof, together with the right to a proportionate part of the company's assets in case of its dissolution, and that through the acts of the defendants he has been kept out of his own, which he demands, agreeing to turn over to each so much as each is entitled to receive. It is asserted that he is merely seeking to redeem a pledge, and hence his remedy is for violation of a contract, and he should have obtained all that was due him by making tender, and then, in a legal action, recovering the stock, or else the value of it. The answer to this is that the mere value of the certificate would not give him that to which he has a right, namely, the stock itself, with the interests that go with it. As was said in 2 Story, Eq. Jur. p. 237, § 1032:

"Generally speaking, a bill in equity to redeem will not lie on the behalf of the pledgor or his representatives, as his remedy upon a tender is at law. But if any special ground is shown, as if an account or a discovery is wanted, or there has been an assignment of the pledge, a bill will lie."

Here it is shown that the pledgee has parted with the pledge without the knowledge or consent of the pledgor, and by private, and not public, sale; that the transferees were notified of the plaintiff's claim, but retained the stock; that the company, after notice, issued a new certificate. Wrongful acts are alleged and proved, and equity alone permits the plaintiff to bring in all the parties, and recover of them not mere money value at a given time, but the stock itself, or new stock in the place thereof, and the interests and rights which a stockholder has. Further, it appears that the amount of the account for which the stock was pledged is in dispute, and in such cases "it is not necessary to pay or tender the amount before bringing suit. It is enough if he offers in his bill to pay or perform whatever obligations rested upon him in that regard, and the plaintiff has complied with that rule." Zebley v. Trust Co., 139 N. Y. 470, 34 N. E. 1067. Herein it appears that the pledgee has put it out of his power to return the securities, and therefore a tender would be a useless ceremony, which the law never required. Jones, Pledges, § 748; Sheridan v. Presas, 18 Misc. Rep. 180, 41 N. Y. Supp. 451.

It is contended that in an action of replevin, in which all the parties were joined, the plaintiff would have had adequate remedy; and reference is made to Nichols v. Michael, 23 N. Y. 264, 80 Am. Dec. 259,— a case of fraudulent purchase of goods, in which the defendant, before the action was brought, had transferred the goods to his assignee, and

both were joined, and it is argued that replevin will lie, although the defendant has conveyed the property to other persons. This latter is true, but the relief, if neither party has the thing sought to be replevied, is money damage; and in the case of Nichols v. Michael the assignee had the goods. All such cases are distinguishable from the one at bar for the reason that here the certificate was canceled by the defendant company, and a new one issued, and the relief sought is not money damages, but a stock certificate of 100 shares, with the rights of a stockholder. To that the plaintiff is entitled, if entitled to any relief, and that an action in replevin could not have given him. Only equity could compel the issue of a new certificate, or accord to him the rights of a stockholder, by compelling the company to recognize the plaintiff's rights. By the wrongful acts of some of the defendants, the plaintiff has been deprived of his privileges, and hence he is entitled to look to equity. To that end, he properly joined all those having an interest in the subject-matter, and asked for an adjustment of his account, and incidentally an accounting as to dividends, etc. Apart, therefore, from the matter of adjusting his account and determining his dividends, his cause of action in equity is properly brought.

In this we have assumed that the defendants had notice of plaintiff's claim to the certificate when it came into their possession, or else that it made no difference whether they had notice or not. It is very pertinently urged that the certificate of stock in the hands of Clark did not guaranty to him good title, whether he be charged with notice of the pledge or not, because the rule respecting commercial paper in the hands of third persons not charged with notice of existing equities between the original parties does not apply to certificates of stock, even if indorsed in blank. Knox v. Eden Musee Co., 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700; Jones, Pledges, § 461. Upon the subject of notice, however, the proof is to be read with every intendment in favor of the plaintiff; and it is a fair inference that if Clark, as testified, received from Burgess a letter dated June 16, 1893, stating that the stock had been pledged by plaintiff for a debt, and received from Burgess the transfer dated June 22, 1893 (the answer alleging that he acquired title about that time), he received the stock with notice of plaintiff's claim. And it further appears that the transfers were so unusual (being in the form of indorsements pasted on the back of the certificate, some not witnessed) that Mr. McDonald, the vice president of the company, sought out the plaintiff to ask about it. Thus is evidence furnished, by the very appearance of the certificate, sufficient to put an intending purchaser upon inquiry.

The most serious questions relate to the statute of limitations, and incidentally to the doctrine of laches and acquiescence. If the action was cognizable only at law, and not a subject of equity jurisdiction, then, clearly, the six-year statute of limitations would apply; but, if the plaintiff's action was one in equity, then the ten-year, and not the six-year, statute is controlling. Undoubtedly the right of a pledgor to redeem is a right founded upon a contract obligation or liability, express or implied; and, in law, such right would be barred at the expiration of six years from the time of the denial of the pledgor's right by the pledgee, or those in privity with him. It may be conceded

that at law the statute commenced to run from the time of the repudiation of the pledge, in 1893, and thereafter it would be necessary, in order that plaintiff should enforce his remedy at law, to begin his action within six years. If, however, while that statute was running, the thing pledged was converted, and by assignments passed into the hands of third parties, and if, in addition, to determine the amount due on the pledge, an accounting was necessary, or thereafter the plaintiff had no adequate remedy at law, the cause of action, as well as the remedy, became a subject of equitable cognizance, and in that court only could the rights of the parties be determined, or the relief to which the plaintiff was entitled be accorded. In considering this subject of the statute of limitations, as well as the nature of the action, we must bear in mind that there was no formal demand upon the plaintiff to redeem the pledge, nor was there any action taken to reduce the thing pledged into possession by means of a judgment or a public sale. The defendants treated the stock as though it was absolutely the property of the individuals who from time to time held it, and through whose action, with the acquiescence of the company, it finally, by mesne assignments, and the issue of a new certificate substituted for the old, passed into the name and under the dominion of the defendant Clark. If we assume, therefore, that there was a repudiation of the pledge at the time when the transfer was made to Burgess, in 1893, and thus the right which the plaintiff had to commence his action at law to replevy the certificate or redeem the pledge accrued, we must necessarily consider the facts occurring after such right arose, and the statute commenced to run for the purpose of determining whether the six or the ten-year statute applies. Although the mere repudiation of the pledge by the original holder of the certificate did not destroy the plaintiff's remedy at law, we think that the effect of the subsequent assignments, together with the final surrender of the certificate to the company, its cancellation, and the issuing of a new certificate therefor, coupled with the fact that a dispute existed as to the amount due on the original pledge, which it was necessary for the plaintiff to have ascertained in order to make a tender, left as his only full and adequate remedy, which was the obtaining of the certificate, a suit in equity, as to which, if any, the ten-year statute would apply.

We have serious doubts, however, upon the facts here appearing, whether either statute commenced to run before the commencement of this action. In Bailey v. Drew (Sup.) 2 N. Y. Supp. 212, where the bonds were pledged as collateral for a note, it was said:

"By the pledge of those bonds as security for the notes, the title to the bonds did not pass to the pledgee. The title remained in the pledgor until it was devested by a sale upon notice or by judicial proceedings. * * * The enforcement of this right [the right to redeem] depended upon the ownership of the bonds, and the statute of limitations, restricting the time in which legal proceedings must be commenced, does not limit this right of redemption; for by such redemption the special property of the pledgee ceased, and as the title of the pledgor cannot be devested, except by a sale on notice or by legal proceedings, his title to the property remains unaffected by the lapse of time until the pledgee takes the necessary proceedings to devest it. As an incident to this right of redemption, the pledgor has the right, where the amount due on the obligation to secure which the pledge

was given is uncertain, to come into a court of equity and ask to have the amount ascertained, and, on payment of such amount, to recover the possession of the pledge."

Should we, however, as already stated, consider the cause of action as arising and the statute as beginning to run when the pledge was repudiated, then, clearly, with respect to this suit in equity, the earliest date which can be fixed was when the plaintiff learned that the certificate of stock was in the possession of the defendant Clark, who, against the protest of the plaintiff, obtained its transfer upon the books of the company, which date, as compared with the time this action was commenced in equity, was within the ten-year statute.

The further insistence that, if the statute of limitations is not a bar, then the plaintiff has lost his rights by laches and negligence, requires but a brief consideration. In Cox v. Stokes, 156 N. Y. 491, 51 N. E. 316, it is said:

"Whether the doctrine of laches, as distinguished from the statute of limitations, now exists, is open to serious doubt."

If, however, either the doctrine of acquiescence or of laches can, in a proper case, be invoked, neither can be interposed in this action as a bar.

As defined in 18 Am. & Eng. Enc. Law (2d Ed.) p. 97:

"Laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." And again, at page 98: "It has been said that, if laches is the negligent failure to assert a positive right when opportunity is afforded, acquiescence is the intentional failure to resist the assertion of an adverse right."

As to when either doctrine may be invoked, it is said (page 100):

"When the delay is of such a nature as to prevent substantial justice between the parties, the courts are ready to declare that the remedy sought is inequitable and must be refused." And again: "It has been held that, so long as the relative positions of the parties are not altered to the defendant's prejudice, delay is of very little consequence."

The rule we have finally summed up as follows (page 103):

"When the complainant has by his delay induced or suffered the respondent to incur expense or enter into engagements of a burdensome character, a court of equity will consider that he is guilty of such laches as precludes him from obtaining relief. If the bar of the statute of limitations is applicable to the suit, but has not intervened, delay alone will not preclude the assertion of the complainant's equitable right. The respondent must, in addition, have been prejudiced by being lulled into security thereby."

Our conclusion upon the facts here presented, applying the principles thus stated, is that upon the subject of laches and acquiescence, as well as with respect to the statute of limitations, no bar exists to the relief to which the plaintiff in this suit of equity is entitled. It follows, therefore, that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except INGRAHAM, J., who dissents.