## VOLUME 100,

### AND

## New York State Reporter,

## VOLUME 134.

(114 App. Div. 493.)

### TREADWELL v. CLARK et al.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

1. APPEAL—REVERSAL—POWER OF TRIAL COURT AFTER REMAND—AMENDMENT OF PLEADING.

Issue was joined in an action in December, 1899. A trial was had in June, 1901. In June, 1902, the judgment dismissing the complaint on the ground of laches was reversed. The cause was placed on the day calendar for second trial, which commenced in December, 1904. A motion to renew a motion to amend the answer by pleading the statute of limitations and want of jurisdiction in the court on the ground of the non-residence of plaintiff was made after the cause had been placed on the calendar for the second trial. Held, that the motion was properly denied, since due diligence would have sooner discovered the facts attempted to be set up in the amended answer.

2. SAME—EFFECT OF DECISION—LAW OF THE CASE.

A decision of the appellate court is the law of the case on a subsequent trial, where the evidence on questions of law decided is the same on the two trials.

3. TRIAL—FINDINGS OF COURT—CONSTRUCTION.

A certificate of stock was pledged by the owner with an agent to secure a debt to the principal, and through the agent the stock was transferred at private sale, without knowledge of the owner. In a suit to redeem and recover the stock, the court found that the final transferee had not, until after acquiring the stock, any knowledge that the owner had only pledged the stock, but refused to find that he had no notice of the circumstances under which the transferror obtained the certificate, and also refused to find that the first transferee bought the stock in good faith, and sold it to the final transferee in good faith, believing that he had a right thereto, and also refused to find that the final transferee bought in good faith. Held, that the finding was not a finding that the final

transferee was a purchaser of the stock in good faith, without knowledge of the rights of the owner, and without knowledge of facts putting him on inquiry concerning the rights of the owner.

4. CORPORATIONS—STOCK—TRANSFER BY PLEDGEE—NOTICE TO TRANSFEREE—EVIDENCE.

A certificate of stock was pledged by the owner with an agent to secure a debt to the principal, and through the agent the stock was transferred at private sale, without the knowledge of the owner. The certificate, after being pledged, only showed the owner's name inserted in the blank, "Know all men by these presents, that ——— do hereby appoint." *Held*, that the appearance of the certificate was such as to put the transferee on inquiry, and he was chargeable with the knowledge which reasonable inquiry would have revealed.

5. SAME—TITLE OF TRANSFEREE.

A certificate of stock was pledged by the owner with an agent to secure a debt to the principal. It was not assigned, and title did not pass. Through the agent the stock was transferred at private sale without knowledge of the owner. *Held* that, in the absence of some element of estoppel, no title was acquired by the transfer.

6. SAME—SUIT TO REDEEM—COMPLAINT.

A complaint in a suit to redeem and recover corporate stock, sold by the pledgee thereof without authority, and without the knowledge of the pledgor, which alleges that plaintiff pledged the stock to secure a debt, does not allege that he signed the power of attorney on the certificate, or assigned the stock to the pledgee.

7. SAME—TITLE OF TRANSFEREE.

Where a pledgee of corporate stock sold the same without notice to the pledgor, or where the same was delivered to the agent of the pledgor, who appropriated the same to his own use by selling it as his own, the buyer acquired no title as against the pledgor.

8. SAME—RIGHT OF PLEDGEE TO SELL.

Where a certificate of stock was pledged with an agent to secure a debt to the principal, the principal had no right to sell the certificate except at public auction on personal notice to the pledgor of the time and place of sale.

9. SAME—TITLE OF PURCHASERS.

A certificate of stock was pledged by the owner with an agent to secure a debt to the principal. The owner intended to part with the possession of the stock. He clothed no one with the indicia of title. *Held*, that all purchasers from the pledgee were put on inquiry, and the owner was not estopped from asserting title as against them.

10. SAME—BURDEN OF PROOF.

Where an owner of stock showed that the same had been stolen or converted, the burden rested on one claiming title thereto as a transferee to show that he was a bona fide holder for value.

11. SAME.

A certificate of stock was pledged by the owner with an agent to secure a debt to the principal. The certificate was not assigned, and title did not pass, as the owner merely signed his name in the blank, "Know all men by these presents that ——— do hereby assign," etc. The agent transferred the stock at private sale without the knowledge of the owner. *Held*, that the transferee must, to hold the stock as a bona fide holder for value, prove facts constituting an estoppel to relieve himself of notice or knowledge of the facts that a reasonable inquiry would have disclosed.

12. PLEDGES—TRANSFER TO THIRD PERSON—RECOVERY BY PLEDGOR—TENDER TO TRANSFEREE OR PLEDGEE—NECESSITY.

Where a transferee of corporate stock under a wrongful transfer by a pledgee thereof declined to deliver the stock to the pledgor on demand, and manifested an intention to contest the pledgor's right to a recovery of the stock, the transferee waived a tender of the amount he had paid

for the transfer; conceding that a tender was necessary to enable the pledgor to recover the stock.

13. SAME.

The right of a pledgor of corporate stock to redeem, and to recover the same in the hands of a transferee of the pledgee, does not depend on the consideration paid by the transferee, or whether the transferee should be reimbursed therefor; and though the transferee is entitled to be reimbursed for the amount paid for the transfer, a tender before trial is not necessary.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Pledges, § 90.]

14. SAME—RECOVERY—AMOUNT.

A certificate of stock was pledged by the owner with an agent to secure a debt to the principal, and through the agent the stock was transferred at private sale, without the knowledge of the owner, and a new certificate issued to the final transferee. The transferee refused to surrender the stock on the demand of the owner. *Held*, that the owner, on being entitled to recover, was entitled to the stock or its value at the time of trial.

Appeal from Special Term, New York County.

Action by George A. Treadwell against William A. Clark and others. From an order denying a motion for leave to renew a motion for leave to amend the answers, and from a judgment for plaintiff, certain of the defendants appeal. Affirmed.

See 92 N. Y. Supp. 166.

This is an action for the redemption of a certificate of stock alleged to have been sold, without authority, by the pledgee thereof. The evidence shows, and the trial court found in substance, among other things: That on the 7th day of March, 1888, the plaintiff was the owner of certificate No. 311, representing 100 shares of stock in the defendant, the United Verde Copper Company, a corporation organized under the laws of the state of New York, bearing date the 5th day of June, 1884, issued and then standing on the books of the company in his name. That the plaintiff was then sojourning in London, England, and was indebted to one Edward Bennett, a grocer, for merchandise, and, desiring further credit, delivered the certificate of stock to one Charles E. Thomas, the manager of the grocery business, for the purpose of securing the existing and any subsequent indebtedness to said Bennett. That before delivering the certificate plaintiff wrote his name upon the back thereof, just under the first line of the printed form of a power of attorney, in the blank space left for filling in a recital of the name of the person executing the power of attorney, but he did not sign at the end, or fill in the blank at the end for the date of execution, or have his signature witnessed, as provided on the printed form opposite the blank for the signature of the person executing the assignment or power of attorney; and that this did not constitute a written assignment of the certificate, or of a power of attorney, in blank or otherwise, authorizing any other person to assign it. That the certificate was then of small value. That Bennett left the certificate in the possession of Thomas, whom he held to be personally liable to him for plaintiff's indebtedness. That plaintiff was at the date of the trial still indebted to Bennett or his personal representatives on the account, together with interest, in the sum of $489.59. That after the deposit of the certificate as such security, a dispute arose between the plaintiff, Bennett, and Thomas as to the amount of his indebtedness, and the amount thereof remained in dispute until the date of the trial of this action. That in the year 1889 Thomas left Bennett's employ, and, without the knowledge or consent of plaintiff, took the certificate with him. That plaintiff has not been given notice in any manner that the stock would be sold to pay the indebtedness, or that Bennett's lien thereon would be foreclosed. That in January, 1893, Thomas sold the certificate to the defendant Burgess, and wrote his name upon the back in the blank power of attorney, not at the end, however, but in the blank left for filling in the name of the person to be designated as the attorney, which the court found

did not constitute an assignment in writing, or the execution of a power of attorney, in blank or otherwise, authorizing any other person to assign the certificate in blank or otherwise. That thereafter, and in June, 1893, Burgess sold and delivered the certificate to the defendant Clark for $300, and in making the sale and delivery wrote his name upon the blank of the certificate in the printed power of attorney, in the blank space intended for filling in the name of the transferee, which the court found and held did not constitute an assignment in writing, or power of sale, in blank or otherwise, authorizing any other person to assign the certificate. That "in consequence of the apparent and obvious insufficiency and irregularity of the indorsements of said certificate, at the request of the defendant Clark, the defendant Charles E. Thomas on June 22, 1893, executed a formal assignment of the said certificate, together with all dividends thereon, to the defendant John Dewitt Burgess, and on the same day, at like request, the defendant John Dewitt Burgess executed a formal assignment of said certificate of stock, with all dividends thereon, to the defendant William A. Clark." That on said 22d day of June, 1893, plaintiff was first notified that the certificate had come into the possession of the defendant Clark, and did not know until that time that Bennett or Thomas had parted with or sold or attempted to sell it. That on said last-mentioned day the plaintiff was requested, in behalf of the defendant Clark, to execute a formal assignment to him, which request was declined, and the defendant Clark was notified that the certificate had been deposited with Bennett as pledgee, and that plaintiff had received no notice of sale, and had not consented to a sale thereof. That "until said June 22, 1893, the defendant Clark had no knowledge, notice, or information that plaintiff had parted with said certificate only as a pledgee to secure an indebtedness to said Bennett, nor had said Clark until said date any knowledge, information, or notice how said certificate had come into the possession of the said Charles E. Thomas." That in August, 1893, plaintiff personally notified the defendant Clark that he was the owner of the certificate of stock and of the facts concerning the pledge thereof, and demanded delivery to him, which was refused, and on the 16th day of the same month the plaintiff notified the defendant Clark and the United Verde Copper Company in writing that he was the owner of the certificate, and demanded possession thereof, and forbade them to recognize any one else as owner, or to transfer it. That, notwithstanding the notice and demand, the company recognized the defendant Clark as owner, and on the 16th day of September, 1893, accepted a surrender of the certificate by the defendant Clark, transferred the stock on its books to his name, and issued to him in his name a new certificate (No. 542) therefor, and thereafter the defendant Clark, claiming to be the owner, collected and received the dividends declared and paid thereon. That in 1899 the New York corporation was lawfully dissolved, and its property became vested in its directors, under section 57 of the stock corporation law (Heydecker's Gen. Laws, p. 2921, c. 36), and pursuant to a reorganization plan, on the 2d day of September, 1899, the United Verde Copper Company of West Virginia was incorporated under the laws of West Virginia in the interests of the former stockholders of the New York corporation, and on the 9th day of January, 1900, the defendant Clark exchanged said certificate No. 542 for a certificate representing 100 shares in the new corporation, and a debenture bond for $1,000 issued by it, and still holds them, claiming ownership, and has collected dividends and interest thereon. That the value of the 100 shares in the West Virginia corporation at the date of the trial was $30,000, and of the bond was $1,000. That the defendant Clark received dividends on said certificate No. 542, aggregating $2,125, which with interest at the date of the trial aggregated $2,960.96, and from the Virginia corporation on the stock $4,125, which with interest aggregated $4,878.24, and $189.55 interest on the bond, which with interest amounted to $216.18. That the $300 paid by the defendant Clark, with interest from January 1, 1893, to the date of the trial aggregated $508.10. The court found as conclusions of law that the plaintiff was entitled to redeem the certificate of stock in the New York corporation and the stock and bond of the West Virginia corporation issued in exchange therefor, as against Bennett and his

estate and all defendants, on paying the amount of the indebtedness to secure which it was pledged, aggregating at the time of the trial $489.59. That plaintiff was entitled to recover from the defendant Clark the certificate representing 100 shares of stock in the West Virginia corporation and the debenture bond, and that if the defendant Clark failed to deliver them within a time to be fixed in the judgment the plaintiff was entitled to recover from him the sum of $31,000, the value thereof. That the moneys received by the defendant Clark on account of the stock and bond, with interest, aggregating at the time ·of the trial $8,054.48, belongs to the plaintiff, and that he is entitled to recover that sum less the amount due Bennett, which was directed to be deducted and paid to the public administrator, as administrator of said Bennett, deceased, and the $508.10, representing the amount Clark paid for the stock and interest thereon, leaving a balance of $7,056.79, for which judgment was awarded in favor of plaintiff, with interest from December 22, 1904. That plaintiff was entitled to receive and collect the dividends and interest on the stock and bond after December 3, 1904, and to a judgment for costs. Judgment was entered in accordance with the decision.

On the 3d day of November, 1904, the appellants moved to amend their answer so as to deny the plaintiff's residence in the state of New York, and to plead the statute of limitations of the state of Montana and want of jurisdiction in this court. The motion was denied, apparently upon the ground that no affidavit was made by the defendant Clark, and that sufficient excuse for the delay in making the motion had not been shown. On the 1st day of December, 1904, appellants moved upon the same and additional affidavits, including an affidavit of the defendant Clark and the proposed amended answer, for leave to renew the former motion and to serve the proposed answer. The court was presided over by the same justice who presided when the original motion was made, and the motion was again denied. It is stated that an appeal was taken from that order to this court, and that the appeal was dismissed. 92 N. Y. Supp. 1148. The present record contains the notice of appeal from the last order, and the notice of appeal from the judgment gives notice that the appellants also intend to review the order.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Alfred B. Cruikshank, for appellants.
Charles M. Demond (Russell G. Lucas, on the brief), for respondent.

LAUGHLIN, J. Issue was joined in this action on the 5th day of December, 1899. The first trial was in the month of June, 1901, and at the close of the plaintiff's case, judgment was directed dismissing the complaint on the ground of laches. The judgment was reversed by this court in June, 1902. Treadwell v. Clark, 73 App. Div. 473, 77 N. Y. Supp. 350. The second trial was commenced on the 20th day of December, 1904. The motion to renew the motion to amend the answer was made after the case was placed on the day calendar for the second trial.

Without stopping to consider the objections that the appellants cannot now review the order denying the motion to amend on account of the dismissal of the appeal therefrom, and owing to their failure to obtain leave to renew the motion, we are of opinion that the motion was properly denied upon the ground of laches. The plaintiff alleged that he was a resident of the state of New York, and this allegation was not denied. He was a witness upon the first trial, and fully examined concerning his residence. The defendant Clark had known the plaintiff for many years. It is manifest that due diligence on the part of the ap-

pellants would have enabled them to have sooner discovered the facts which they sought to set up in their amended answer. If they wished to question the jurisdiction of the court upon the ground that the plaintiff was not a resident of New York, they should have investigated that fact at the outset, and have moved to be relieved from their admission by their pleading, and for leave to set up the other facts which they now deem material to raise the question of jurisdiction and the statute of limitations of Montana; knowledge of which could have been readily acquired, if, indeed, they are not chargeable therewith, as the principal defendant, Clark, is a resident of that state. They should have made their motion without having quietly submitted to the jurisdiction of this court, and sought relief from the plaintiff's claim by defending the action for upwards of six years.

On the former appeal from the judgment dismissing the complaint this court decided many of the questions presented by the present appeal. We there decided that jurisdiction was acquired; that a suit in equity would lie, that the plaintiff, if entitled to recover, would be entitled to recover the stock, if delivery thereof could be made; that plaintiff was not guilty of laches in bringing the action; that no statute of limitations was a bar thereto; and that a tender was not a condition precedent to the right to maintain the action. Those questions were argued on the former appeal, and were necessarily involved. Unless they had been resolved in favor of the plaintiff, we should have affirmed the judgment. The evidence upon which the questions of law which we decided before arise is not materially different now. We should not therefore re-examine those points of law, and they must be regarded by this court, at least, as the law of the case.

It is only necessary to consider some questions discussed in our former opinion, but not finally decided, and any new light in which the case is presented by the evidence offered in behalf of the appellants. In our former opinion (77 N. Y. Supp. 350) reference was made to evidence indicating that the defendant Clark had actual notice that the stock had been merely pledged by the plaintiff. Allusion was also made to the indorsements upon the certificate, and the opinion was expressed that "this is evidence furnished by the very appearance of the certificate sufficient to put an intending purchaser upon inquiry." In the former record it appeared that in a conversation between the defendant Clark, the plaintiff, and Mr. Demond, one of the attorneys for the plaintiff, Clark admitted to them, in effect, that before the purchase of the stock was completed he had received a letter from Burgess, from whom he received the stock, informing him that the stock had been pledged by the plaintiff to a grocer in London, and this evidence was uncontroverted. Upon the last trial both the plaintiff and Demond again testified to the same effect, but their testimony in this regard was controverted by the testimony of the defendant Clark. There are many facts and circumstances tending to corroborate and indicate the probability of the testimony given by the plaintiff and his attorney on this subject; and were it not for the fact that other evidence now adduced by the appellants, which is practically uncontroverted, is before us, we would be inclined to the view that the learned trial court, in finding that until the 22d day of June,

1893, the defendant Clark had no notice, knowledge, or information that plaintiff had parted with the certificate only as a pledge to secure an indebtedness to Bennett, and that until said date he had no information or notice as to how the certificate came into the possession of Thomas, is against the weight of the evidence. It now appears, however, that Burgess opened negotiations for the sale of the certificate of stock by a letter to the United Verde Copper Company on the 1st day of May, 1893. That the company referred his letter to the dedendant Clark, and so notified him by letter on the 3d of May. That on the 6th day of May Burgess wrote the secretary of the company, inquiring concerning the value of the stock and accrued dividends thereon. That on the 13th of May the secretary replied that there were no unpaid dividends, that the certificate stood in the name of Treadwell, and that there was no shareholder by the name of Thomas or Burgess. That on the same day the defendant Clark wrote Burgess, in answer to the latter's letter to the company of May 1st, saying:

"I do not find your name on the list of stockholders of the United Verde Copper Company. There are 800 shares in the name of Geo. A. Treadwell. However, if you hold the stock, I am willing to pay you $3 per share for it."

And informed Burgess that he would be in Los Angeles, Cal., in a few days, and that a letter would reach him there at No. 933 Olive street. That on the receipt of this letter Burgess wrote Wells, Fargo & Co. on June 2d at Los Angeles, inclosing the stock, with directions to deliver it to Clark on payment of $300. That notice was sent by Wells, Fargo & Co. to the defendant Clark at the address given in his letter to Burgess, and the brother of the defendant Clark called at the office of the express company, and was informed of the contents of the letter sent by Burgess, inclosing the stock, and, as he had no knowledge on the subject, he wrote the defendant Clark at Butte, Mont., saying:

"There is 100 shares of Verde stock at the express office to be delivered to you upon payment of $300. Shall I take it up? If so, send order for Wells, Fargo & Co. to deliver to me, and I can forward by regular mail."

That on the 12th of June the defendant Clark wired his brother in answer to this letter, "Take out Verde stock, and pay Wells Fargo if assigned by Treadwell to Thomas, then Burgess." That upon the 13th day of June the brother of the defendant Clark paid the express company $300, and received the stock and forwarded it by mail to the defendant Clark at Butte, Mont., where it was received on or about the 15th day of June, 1893. From this evidence it appears that the sale from Burgess to Clark was consummated prior to the time when he would have received a letter from Burgess, who was at Tucson, Ariz., if written on the 16th day of June, 1893. It is not very material, therefore, whether Clark received a letter from Burgess dated on the 16th day of June, informing him that the stock had been pledged by the plaintiff in London. To this extent, therefore, the observations contained in our former opinion are inapplicable to the case as presented by this record. The rights of the defendant Clark are to be determined upon the transaction with the express company, representing Burgess, and any knowledge which he possessed or acquired at that time by an inspection of the certificate, or is chargeable with as matter of

law for his failure to inquire. It appears that, prior to accepting and paying for the stock, neither the defendant Clark nor his brother, who represented him in accepting the certificate, made any inquiry concerning the right of Burgess to sell the stock, other than an examination of the stockbook, showing that the stock stood in the plaintiff's name, as appears from the letter to Burgess.

The learned counsel for the appellants lays stress upon the finding in the record now before us that prior to the 22d day of June, 1893, the defendant Clark had no notice, knowledge, or information that the plaintiff parted with the certificate only as a pledge to secure his indebtedness to Bennett, or as to the circumstances under which the certificate came into the possession of Thomas. If this finding is to be construed as a finding that the defendant Clark was a purchaser in good faith and without any notice or knowledge of the rights of the plaintiff, and without notice or knowledge of facts putting him upon inquiry concerning the rights of the plaintiff, there might be difficulty in sustaining the judgment. It might then be argued with some force that the logical conclusion from such a finding would be that the plaintiff in indorsing the certificate had enabled the holder to mislead the defendant Clark to his prejudice, and that the plaintiff should be estopped from now claiming that he did not intend to part with the title. It is manifest, however, that the learned court did not so intend in making this finding. It is evident that the sole object and purpose of the finding was to show that the learned trial court disbelieved the testimony concerning the letter of June 16, 1893, from Burgess to the defendant Clark, and was of opinion that Clark had no actual notice of plaintiff's claim until the 22d day of June, 1903, when McDonald, the vice president of the company, to whom Clark had on the 17th day of June forwarded the certificate, with the request that he obtain an assignment thereof from the plaintiff, was informed by plaintiff that he had pledged the stock as security for the indebtedness to the grocer, and had never received any notice of sale thereof. This clearly appears by other findings and by the refusal of the court to make findings requested by the appellants.

The court refused to find, as requested by appellants, that neither the defendant Clark nor his brother had "knowledge or notice of the circumstances under which" Thomas obtained the certificate of stock, and marked the finding "Refused, except as already found."

The court also refused to find, as requested by the appellants, that Burgess purchased the stock in good faith, and sold it to Clark in good faith, believing that he had right and title thereto; and also refused to find, as requested by them, that the defendant Clark purchased the stock in good faith, believing that Burgess had title thereto and the right to dispose thereof. There is no express finding that the appearance of the certificate of stock was such as to put the defendant Clark upon inquiry, and that he is chargeable with the knowledge which reasonable inquiry would have revealed. The evidence, however, fairly warrants, if it does not require, such a finding; and, if necessary for the purpose of sustaining the judgment, the fact must be assumed to have been found. The court did not find that the plaintiff delivered the certificate to Thomas as the agent of Ben-

nett, as security for the indebtedness, but that it was not assigned, and that title did not pass. This finding is sustained by evidence, and, in the absence of evidence and a finding of estoppel, it is fatal to the claim of title made by the defendant Clark. In the absence of some element of estoppel, no title can be acquired to personal property, other than negotiable instruments, as against the true owner. Mohawk Bank v. Schenectady, 78 Hun, 90, 28 N. Y. Supp. 1100, affirmed in 151 N. Y. 665, 46 N. E. 1149; Ballard v. Burgett, 40 N. Y. 314. Certificates of stock have only been given the attributes of negotiability to a limited extent. Knox v. Eden Musee, 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700; Driscoll v. West Bradley & C. M. Co. et al., 59 N. Y. 96; Weaver v. Barden, 49 N. Y. 286.

The learned counsel for the appellants contends that in view of the allegation of the complaint to that effect that the plaintiff, on delivering the certificate of stock to Thomas, indorsed it in blank, which is admitted by the answer, there was no issue with respect to the appearance of the certificate or the effect of the plaintiff's indorsement. We do not agree with this contention. The allegation of the complaint was strictly true. The plaintiff alleged that he pledged the stock, not that he assigned it. The difficulty is that the learned counsel for the appellants seeks to construe the allegation into an allegation that the plaintiff signed the power of attorney or assigned the stock in blank. Such is not the allegation, and it should not be so construed. The plaintiff neither executed the blank power of attorney nor assigned the certificate. He did not part with title. It is therefore a case of a pledge of stock, where the pledgee has sold without notice, or where the property pledged is delivered to the agent of the person for whom it is intended, and the agent appropriates the same to his own use by selling it as if it were his own, and is thus guilty of larceny; in neither of which cases does the purchaser get a good title as against the true owner. Treadwell v. Clark, supra; Cook on Corporations (4th Ed.) vol. 2, § 472; Jones on Pledges, §§ 725, 581; Knox v. Eden Musee, 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700; Marden v. Dorthy, 160 N. Y. 41, 54 N. E. 726, 46 L. R. A. 694. From the plaintiff's standpoint, Thomas was acting as the agent of Bennett, and he left the certificate with him in pledge for Bennett. In these circumstances, Bennett had no right to sell the certificate except at public auction, upon personal notice to the plaintiff of the time and place of sale (Content v. Banner, 184 N. Y. 121, 76 N. E. 913); and in the event of his inability to give such notice, his remedy was an action to foreclose the lien (Stearns v. Marsh, 4 Denio, 227, 47 Am. Dec. 248; Strong v. Banking, 45 N. Y. 718). Although, as between the plaintiff and Bennett, Bennett may be responsible to the plaintiff for the sale, yet it appears by the undisputed evidence that Bennett did not authorize the sale, or have any knowledge thereof, and that Thomas did not account to him for the proceeds. Thomas concedes that he first received the certificate of stock in pledge for Bennett, but he claims that Bennett elected to hold him personally responsible for the account, and refused to accept the stock, and that the plaintiff, upon being notified of this fact, made him a present of the certificate. The court in directing the

judgment orally from the bench stated in emphatic terms the incredibility of the story, and that plaintiff's denial thereof has been accepted by the court in making the decision. With that view of this evidence we agree.

The defendant Clark, therefore, is in the position of being in possession of property that rightfully belongs to the plaintiff, and that has been wrongfully appropriated and converted. He attempts to show title by contending that the plaintiff, in placing his name in the blank in the second line of the power of attorney, intended to execute the power of attorney and assign the stock; and he cites cases holding that in certain circumstances, where the intention to execute a contract was manifest, it is immaterial upon what part of it the signature is placed. That doctrine does not aid him, because, while it would have been competent for him to have shown in support of his title that the plaintiff by thus indorsing his name in the blank power of attorney intended to assign the stock, such is not the presumption to be gleaned from the appearance of the document, without extrinsic evidence, which is all that the defendant Clark acted upon. Perhaps the brother of the defendant Clark did not realize the legal insufficiency of the signature as an assignment of this stock, but the latter knew the necessity of a formal assignment, as shown by his telegram to his brother, and he discovered that it was lacking instantly upon inspecting the certificate, and proceeded to obtain formal assignments, manifesting an intention to hold Burgess if it would not be given, and taking some steps with respect to putting that intention into effect, as appears by the letter from Burgess to the plaintiff on the 2d day of September, 1893. It does not even appear that the defendant Clark or his brother was familiar with the signature of the plaintiff, or knew the indorsement of his name was in his handwriting; and, even if they did, it merely indicated that he at one time started to fill out the blank power of attorney or assignment, but that he did not complete it, and for some reason abandoned the intention of doing so. The certificate merely showed the plaintiff's name inserted in the blank as follows: "Know all men by these presents, that * * * do hereby appoint George A. Treadwell. * * *" The defendant Clark, therefore, was not justified in relying upon the certificate as an assignment thereof by Treadwell. The certificate was issued in the plaintiff's name, and it contained the usual printed blank power of attorney for executing a power of attorney or assignment to an individual or in blank, and it was not executed. The first blank was merely filled in. At the end, where a space was left for the signature, there was the usual witness clause blank. No blank except that in the second line appeared to have been filled out by or in behalf of the plaintiff. If the plaintiff had executed the assignment by signing in the proper place at the end, leaving the name of the attorney or assignee blank, then, under the well-settled rule, the certificate would become payable to bearer, and, if he had then pledged it, and the pledgee had sold it without notice, an innocent purchaser for value, relying upon the appearance of the certificate, would obtain good title. McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341; Brady v. Mt. Morris Bank, 65 App. Div. 212, 73 N. Y. Supp. 532; F. A. Bank v. F. S. S.

& G. S. F. R. R. Co., 137 N. Y. 231, 33 N. E. 378, 19 L. R. A. 371,33
Am. St. Rep. 712; Dudley v. Gould, 6 Hun, 98.   In McNeil v. Tenth
National Bank, supra, which is the leading authority upon the subject,
Judge Rapallo, in writing the opinion for the court, says:

"Simply intrusting the possession of a chattel to another as depositary,
pledgee, or other bailee, or even under a conditional executory contract
of sale, is clearly insufficient to preclude the real owner from reclaiming
his property in case of an unauthorized disposition of it by the person so
intrusted.   Ballard v. Burgett, 40 N. Y. 314.   'The mere possession of
chattels, by whatever means acquired, if there be no other evidence of prop-
erty or authority to sell from the true owner, will not enable the possessor
to give a good title.' Per Denio, J., in Covill v. Hill, 4 Denio, 323.   But if
the owner intrusts to another, not merely the possession of the property, but
also the written evidence, over his own signature, of title thereto, and of
an unconditional power of disposition over it, the case is vastly different.
There can be no occasion for the delivery of such documents, unless it is
intended that they shall be used, either at the pleasure of the depositary,
or under contingencies to arise.  If the conditions upon which this apparent
right of control is to be exercised are not expressed on the face of the in-
strument, but remain in confidence between the owner and the depositary,
the case cannot be distinguished in principle from that of an agent who
receives secret instruction, qualifying or restricting an apparently ab-
solute power."

There was nothing on the face of the certificate or in the indorse-
ment by which the plaintiff should be deemed estopped from asserting
his title.   Burgess had possession, but not title.   The plaintiff intended
to part with possession, and he may have intended to assign with a view
to clothing the pledgee with authority to enforce the pledge; but he did
not on the instrument do so.   He clothed no one with the indicia of
title, and all purchasers were put upon inquiry.   Even the maker of a
promissory note, which has been wrongfully or fraudulently diverted,
may successfully defend against a purchaser receiving it under cir-
cumstances such as would put a reasonable man upon inquiry.   Cana-
joharie Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A.
676.   Plaintiff having shown that the stock was stolen or converted, the
burden should rest upon the defendant to show that he was a bona fide
holder for value, which in these circumstances would, in effect, require
proof of the existence of facts constituting an estoppel, to relieve him of
notice or of knowledge of the facts that a reasonable inquiry would
have disclosed.   See Simpson v. Del Hoyo, 94 N. Y. 189.

As already observed, the defendant Clark might have shown, if he
could, that the plaintiff's indorsement was intended as an absolute as-
signment; but he could not rely upon the certificate and indorsement
alone as proof of that.   If he had investigated before purchasing, with
a view to obtaining that evidence, it is probable that he would have
promptly discovered the true facts, as he did upon applying to the
plaintiff for a further assignment.   He is not, therefore, in a position to
invoke the application of the rule of the McNeil Case, supra.

There was no specific discussion on the question of the waiver of the
plaintiff's right to redeem the stock in our former opinion, but the point
is fully covered by the discussion of the claim made by appellant that
the right to maintain the action has been lost by laches.   The evidence
on the part of the plaintiff bearing upon that issue is substantially the

same as before. It is now controverted in some respects, thus presenting a question of fact, which has been decided adversely to the appellants.

The appellants also contend that the court erred in deciding that, in the event of the failure of the plaintiff to recover the stock, he is entitled to its value at the time of the trial. They claim that he should be limited to a recovery of its value at the time he demanded it of Clark, for the reason that he failed to tender the amount Clark paid therefor. It appears, however, that Clark declined to deliver the stock, and manifested an intention to contest plaintiff's right to a recovery. This would constitute a waiver of a tender, even if a tender to him were necessary. Moreover, a tender to Clark was unnecessary. The plaintiff's right to redeem does not depend upon the consideration paid by Clark, or whether Clark should be reimbursed therefor. The tender must be made to the pledgee or his representatives. Even though Clark were entitled to be reimbursed, that would not necessitate a tender before trial in an equity suit. Clark had notice that the plaintiff demanded the stock, and, if he wished to be relieved of the liability of holding it while it might increase or decrease in value, he should have delivered it in accordance with the demand. We held on the former appeal that the plaintiff is entitled to recover the stock, less the amount for which it was pledged, and the court upon the trial has liberally allowed him to be reimbursed for the amount expended, together with interest thereon. It would be a singular judgment that would decree to the plaintiff the right to recover property worth upwards of $30,-000, and leave it optional with the defendants whether to deliver the stock or to pay its value at a remote past period, which in this case appears to have been about $300. If he has a right to the stock, it must follow that he is either entitled to the stock or its value at the time when his inability to recover possession is ascertained.

The exceptions taken upon the trial and to the findings and the refusals of the court to find have been examined, and we think they present no reversible error.

. It follows, therefore, that the judgment and order should be affirmed, with costs. All concur.