THE MOUNT HOLLY, LUMBERTON, AND MEDFORD TURNPIKE COMPANY *vs.* PHILIP FERREE and others.

1. A certificate of stock in an incorporated company, accompanied by a power af attorney, authorizing the transfer of the stock to any person, is *prima facie* evidence of equitable ownership in the holder, and renders the stock transferable by the delivery of the certificate. And when the party in whose hands the certificate is found, is shown to be a holder for value, and without notice of any intervening equity, his title as such owner cannot be impeached.

2. The purchaser of a certificate of shares of stock, with an irrevocable power of attorney from the owner, without notice of any intervening equity, has a perfect right to fill up the power to himself, and to recover at law against the company for refusing to assign the stock upon his demand.

3. A bill of interpleader is proper, only where the complainant has property or funds in his possession, or under control, to which there are two or more claimants, and the complainant is doubtful to which of the claimants the debt or duty is due. It cannot be sustained where the complainant is obliged to admit, that as to either of the defendants, he is a wrongdoer.

4. The want of the affidavit to a bill of interpleader, denying collusion, constitutes a ground of demurrer, but it also may be taken advantage of at the hearing.

*Mr. J. L. N. Stratton,* for complainants.

*Mr. Merritt* and *Mr. J. Wilson,* for Philip Ferree.

*Mr. F. Voorhees,* for administrators of Joseph B. Oliphant.

THE CHANCELLOR. The material question in this cause, is the right of ownership in forty-eight shares of the capital stock of the Mt. Holly, Lumberton, and Medford Turnpike Company. It is admitted that Thomas H. Richards was the original owner, and held in his own name, the certificate of stock. On the 17th of September, 1856, Richards obtained a loan of $1500 from Wm. C. Manderson, and as

collateral security for the repayment of the loan, delivered to Manderson the certificate of stock, accompanied by an irrevocable power of attorney from Richards to sell, assign, and transfer it unto any other person or persons, and to substitute one or more persons with like power. On the same day, Manderson transferred and delivered the certificate, accompanied by the power of attorney, to James M. Ferree, as collateral security for a loan of $1500 for ten days. Manderson having failed to pay the loan, the stock was sold on the 30th of June, 1857, after notice to Manderson, and after notice by public advertisement of the time and place of sale, at public auction, in the city of Philadelphia where the parties resided, and struck off to Philip Ferree, one of the defendants, for $648, he being the highest bidder; and the certificate of stock, with the power of attorney attached, was then and there delivered to the purchaser. On the 27th of February, 1861, Richards, claiming that he had paid his debt to Manderson, transferred his interest in the stock to Joseph B. Oliphant, whose assignees now claim the stock adversely to Ferree. The only question is, whether Ferree, under the facts stated, acquired a valid equitable title to the stock in question. If he did, it is perfectly clear that any subsequent transfer by Richards of his interest in the stock was a nullity, as against the claim of Ferree.

The certificate of stock, accompanied by the power of attorney authorizing the transfer of the stock to any person, is *prima facie* evidence of equitable ownership in the holder, and renders the stock transferable by the delivery of the certificate. And when the party in whose hands the certificate is found, is shown to be a holder for value, and without notice of any intervening equity, his title as such owner cannot be impeached. The holder of the certificate may insert his own name in the power of attorney and execute the power, and thus obtain the legal title to the stock, whenever the loan for which it was hypothecated becomes due, or whenever, by the terms of his contract, he becomes entitled to the stock. And such a power is not limited to the person

to whom it was first delivered, but enures to the benefit of each *bona fide* holder, into whose hands the certificate and power may pass. And the title of the holder is in no wise affected by a provision in the charter or by-laws of the corporation, that the stock is transferable only on the books of the corporation. Such provision is intended merely for the protection and benefit of the corporation. These principles have been repeatedly recognized by the courts of other states, and in commercial cities, constitute the basis of daily business transactions. *Fatman* v. *Lobach*, 1 *Duer* 354; *Leavitt* v. *Fisher*, 4 *Duer* 1; *Commercial Bank of Buffalo* v. *Kortright*, 22 *Wend.* 348; *Bank of Utica* v. *Smalley*, 2 *Cowen* 770; *Angell & Ames on Corp.*, § 354, 564.

The same principles have been adopted and sanctioned by the courts of this state. *Rogers* v. *The New Jersey Insurance Co.*, 4 *Halst. Ch. R.* 167; *Broadway Bank* v. *McElrath*, 2 *Beasley* 26; *Hunterdon Co. Bank* v. *The Nassau Bank, Court of Appeals, June T.*, 1864.

In the latter case, Mr. Justice Ogden, in delivering the opinion of the Court of Appeals, said: "Considerations of commercial convenience and public policy suggest the true rule upon this subject. Where a certificate of shares of stock in an incorporated company, accompanied by an irrevocable power of attorney from the owner to tranfer them, either filled up or in blank, are in the hands of a third party, he is presumptively the equitable owner of the shares, and if he has given value for them without notice of any intervening equity, his title as such owner cannot be impeached."

The application of these principles to the present case is clear, and their operation upon the rights of the parties decisive. The certificate and power of attorney from Richards in the hands of Manderson, were *prima facie* evidence of his ownership. The certificate and power being transferred by him for a valuable consideration to James M. Ferree, without notice of Richards' equity, he became a *bona fide* holder and owner of the stock. And upon the failure of Manderson to repay the loan for which the stock was hypothecated,

he became authorized to sell the stock for the payment of his debt. As a purchaser at that sale, for valuable consideration, Philip Ferree became the owner, and vested with all the rights and title of Richards in the stock at the time of its hypothecation to Manderson. There is no evidence in the cause, of notice to Ferree of the right of Richards to redeem the stock by payment of his debt to Manderson.

It is objected that Manderson could transfer no higher or larger interest in the stock than he himself held, and it is certain that he could not do so to any party having notice of his real title. But his title upon its face was absolute. *Prima facie* his muniments of title were evidence of absolute ownership. The equity of Richards was not disclosed, and if he suffered by the character of the title he made, it was his own folly. If a party chooses to make an absolute conveyance of land, by way of mortgage security for a debt, he has no remedy at law or in equity, against a *bona fide* purchaser of the land in fee, without notice of his equity of redemption. In this aspect of the case, it is totally immaterial whether Richards did, or did not, pay his debt to Manderson, and all the evidence upon that point is irrelevant. The title of Ferree being valid, the claim of the subsequent assignee of Richards and all claiming under him, must be groundless. The title of Ferree, the defendant, is clear. He has a perfect right to fill up the power of attorney to himself, and to recover at law against the company for refusing to assign the stock upon his demand. *Commercial Bank* v. *Kortright*, 22 *Wend.* 348; *Sargent* v. *Franklin Ins. Co.*, 8 *Pick.* 98.

A sale of a pledge by the pawnee, where reasonably and *bona fide* made, and after notice to the pawner, is equally obligatory as if made by judicial process. 2 *Kent's Com.* 582; *Story on Bailments*, § 310.

And even where the sale has been made without such notice, it seems that it cannot be pursued into the hands of a *bona fide* holder without notice of the pledge. *Little* v. *Barker, Hoffman's Ch. R.* 487.

The right is clearly with Ferree. What decree can the court render? No demurrer was filed. The answers are addressed solely to the question of right raised by the bill. No objection was raised as to the propriety of the remedy. Evidence was taken, and the question elaborately discussed upon the merits. Upon the final hearing, objections were first raised to the form of the remedy. Supposing that the failure to file a demurrer, and the acquiescence of the defendants had cured the difficulty, and that the rights of all the parties might be finally disposed of by the decree, the foregoing opinion upon the merits was prepared, but on reflection I am satisfied that no final decree of that character can be made, and that this is not a case for interpleader at all.

There are two sets of claimants to the stock in question. The complainants file their bill of interpleader, asking the court to ascertain and direct to whom the stock should be transferred, and to whom the dividends should be paid. It appears upon the evidence, that the stock had not only been tranferred upon the books of the company, but that certificates of stock (for these identical shares) had been issued and re-issued by the complainants before filing their bill. A bill of interpleader is proper, only where the complainants have property or funds in possession, or under control, to which there are two or more claimants, and the complainant is doubtful to which of the claimants the debt or duty is due.

The ground of the jurisdiction is the danger of injury to the complainant, by yielding to the claim of either party. He therefore comes into court saying, I have a fund in my possession, or property under my control, in which I claim no personal interest, and to which the defendants set up conflicting claims. He asks therefore the protection of the court, that the parties shall be decreed to litigate the question between themselves, that he shall have leave to pay the money or deliver the property to the party to whom it of right belongs, and that he shall have his costs. *Hoggart* v.

*Cutts,* 1 *Craig & Phil.* 204; 2 *Story's Eq. Jur.,* § 806; 3 *Daniell's Chan. Prac.* 1753.

The bill cannot be sustained, where the complainant is obliged to admit, that as to either of the defendants he is a wrong doer. *Shaw v. Coster,* 8 *Paige* 339; 3 *Daniell's Chan. Prac.* 1754.

The complainants have already transferred the stock and issued new certificates. They have assumed the responsibility of acting in advance of the order of the court, and have incurred all the liability that they can incur. They are clearly liable to the owner of the stock as wrong doers. They have voluntarily deprived themselves of the power of obeying the order of the court, if a transfer should be ordered to Ferree, unless indeed they are acting in collusion with the other defendants.

The bill was not properly sworn to. The affidavit contains no denial of collusion between the complainant and any of the other parties. Want of the affidavit constitutes a ground of demurrer, but it also may be taken advantage of at the hearing. *Mitford's Pl.* 143; 2 *Story's Eq. Jur.,* § 809; *Story's Eq. Pl.,* § 297; 3 *Daniell's Chan. Prac.* 1761; *Shaw* v. *Coster,* 8 *Paige* 339.

As the defect in the affidavit was not suggested by demurrer or answer, the omission might be regarded as inadvertently made, and not a ground for disclaiming jurisdiction, if in point of fact, there was no reason to apprehend collusion. But I think the evidence affords strong ground for presumption, that there is in fact collusion between the complainants and some of the other parties. On the 24th of April, 1858, Ferree presented the original certificate of stock and power of attorney to the complainants, and requested a transfer of the stock. The officers of the company refused, or neglected to make the transfer. They do not by their bill allege that they had any notice of any claim or equity on the part of Richards, nor do they suggest any reason whatever for their refusal. On the 21st of January, 1861, the president of the company writes to Ferree

that he can give him no satisfactory answer, whether the directors will transfer the shares or not; that he will lay the matter before the board at the next meeting, and inform him of the result. About one month after the date of that letter, and nearly three years after the company had received from Ferree the evidence of his title and a demand of the transfer of the stock, Richards executed to Thomas Wilkins, who was the *treasurer* of the company, a power of attorney to transfer the stock in question to Joseph B. Oliphant, who was the *secretary* of the company. Richards testified that at the time he executed the power of attorney to Wilkins to make the transfer to Oliphant, he was not indebted to Oliphant, nor can he tell to what, or on what, account the stock was to be credited. The transfer to Oliphant was made upon the books of the company, and a new certificate issued to him, without the production of the old certificate, in direct violation of the by-laws of the company. There are other circumstances in the case which tend to strengthen this charge of collusion, but it is unnecessary to pursue the subject. I am clear that the complainants have no claim to the protection of the court, and that it would be a great wrong to the defendants to impose upon them the costs of this controversy.

The bill must be dismissed with costs. The injunction heretofore issued must be dissolved, and Ferree permitted to pursue his remedy at law.

