## CATHERINE M. BURRICHTER, RESPONDENT, v. LOUIS WISHNEFSKY, APPELLANT.

Submitted October 29, 1926—Decided January 31, 1927.

1. The rule is that while a party may not impeach the character of his own witness or impugn his credibility, he may prove any particular fact by competent testimony in direct contradiction to that to which any of the witnesses called by him may have testified.
2. A trial judge is only justified in granting a nonsuit or directing a verdict upon a court question arising from the admitted or uncontroverted facts of a case, and the weight of conflicting testimony must always be submitted to the jury for their consideration and determination.
3. Conflicting testimony is always for the jury.
4. Twenty years' possession is required to establish title by adverse possession, and that possession must be actual and exclusive, adverse and hostile, visible or notorious, continued and uninterrupted. The party relying on title derived from such a source must prove possession in himself, or in those under whom he claims, of such a character as is calculated to inform the true owner of the nature and purpose of the possession to which the lands are subjected.
5. Whether possession is adverse or not is a question for the jury, unless a court question is presented by admitted or uncontroverted facts.

---

On appeal from the Supreme Court.

For the appellant, *Bleakly, Stockwell & Burling.*

For the respondent, *D. Trueman Stackhouse.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was an action at law in ejectmen brought in the Supreme Court by the plaintiff to secure possession of a small strip of land in the city of Camden, described in the amended complaint. The plaintiff and defendant lived in adjoining premises on Broadway, in the city of Camden. The houses were erected as dwellings upwards of forty years ago and are divided by a line running from

Broadway to an alley in the rear. This line passed through the middle of the partition wall between the houses and frame kitchen extensions, and was continued by a fence running from the rear of those kitchens to the alley. The paper-title of both parties, which is of record, was admitted. The plaintiff's mother acquired her title by deed January 15th, 1902, and it passed to plaintiff, her daughter, as devisee under her will. She lived in the premises from February 1st, 1902, to her death, July 25th, 1920, and her daughter and devisee, down to the time of the trial, with the exception of about two years in California, when the house was closed. The line fence between the properties existed at the time plaintiff moved in. On her examination as a witness the plaintiff could not say whether the fence had been changed or moved any during her absence, but there was no proof that it had been.

The defendant acquired his title by deed August 11th, 1919, and started an improvement in May, 1920, consisting of tearing down the wooden kitchen and replacing it with a brick building. He testified to the presence of the fence as a dividing line between the yards of the two properties, and said it was an old fence. He lived elsewhere on Broadway during the progress of the work, but was in charge of it and saw it as it progressed. He said that the building was erected on his side of the fence and said the fence formed the division line between the properties at the time the improvement was made. Kleiner, the contractor for the new building, testified that he did not move the fence at all during the progress of the building, and it remained exactly where it was, and he erected the building no further north than the line of the fence.

There was testimony showing that the fence was taken down by the contractor and that the foundation wall upon which the new building rests was over upon the land of the plaintiff at different widths, from practically nothing to nearly a foot.

This presented a disputed question of fact, which was for the jury to consider and decide. It is true that Makin, an

engineer, who testified for the defendant, said that part of the wall of the defendant's new building extended over the line of the plaintiff's property, giving the various widths.

Notwithstanding this, the defendant had the right to have the jury pass upon the question of encroachment or no encroachment, for, although this witness of the defendant testified that there was some encroachment, and this was in contradiction of the defendant's testimony and that of his builder, who made the improvement, the rule is that while a party may not impeach the *character* of his own witness or *impugn his credibility,* he may, notwithstanding, prove any particular fact by competent testimony in direct contradiction of that to which any of the witnesses called by him may have testified. *Schreiber* v. *Public Service Railway Co.,* 89 *N. J. L.* 183, and cases cited at page 186. Conflicting testimony is always for the jury, and a trial judge is only justified in granting a nonsuit or directing a verdict upon a court question arising from the admitted or uncontroverted facts of a case, and the weight of conflicting testimony must always be submitted to the jury for their consideration and determination. *Dickinson* v. *Erie Railroad Co.,* 85 *Id.* 586. In the case at bar facts favorable to the plaintiff's claim were not admitted on the trial, nor were the claims of the plaintiff uncontroverted.

The defendant, in his amended answer, averred that he and his predecessors in title for over twenty years prior to plaintiff's bringing suit, had possession of the land in dispute, adverse to the title and possession claimed by the plaintiff. This, seemingly, imported into the case the defense of adverse possession. But when the trial ended there was no evidence whatever upon which the defendant could rely under his claim of adverse possession. There was no evidence that there ever had been any trespass and ejectment prior to the improvements made by the defendant in 1920, nor any evidence of possession by him or his predecessors in title of any part whatever of the plaintiff's premises. The line fence extending from the rear of their buildings to the alley appears to have been an old one, and never to have been disturbed at any

time until the building operation of the defendant. And the whole controversy in this cause was pivoted about that operation, and nothing else. In these circumstances the doctrine of adverse possession had no application, for that must be of twenty years' duration, and it was only four years between the building operation and the bringing of this suit.

In *Foulke* v. *Bond,* 41 *N. J. L.* 527, it was held: "In order to acquire title by adverse possession, the possession must be actual and exclusive, adverse and hostile, visible or notorious, continued and uninterrupted. Notoriety of the adverse claim under which possession is held, is a necessary constituent of title by adverse possession, and therefore the occupation or possession must be of that nature that the real owner is presumed to have known that there was a possession adverse to his title, under which it was intended to make title against him. The party relying on title derived from such a source must prove possession in himself, or in those under whom he claims, of such a character as is calculated to inform the true owner of the nature and purpose of the possession to which the lands are subjected."

There is not a line nor a word in the testimony which shows any adverse possession by defendant or his predecessors in title against the plaintiff, which brings the defendant's case within the doctrine of the Foulke case. The possession of any part of plaintiff's land by defendant, if at all, has only been since the improvements were made in 1920, when trespass and ejectment is charged by the plaintiff against the defendant. The brief for defendant-appellant contains this significant statement: "The whole issue is confined to a strip of land only eight and a half inches at its maximum width. The wall, the location of which is in question, is a solid brick wall, part of a building comprising the home and the retail merchandise establishment of the defendant." This is a concession that the defendant makes no case of adverse possession against the plaintiff, but only a claim with reference to the wall which was built on a foundation laid by him in 1920, four years prior to the bringing of this suit.

Furthermore, whether possession is *adverse or not* is a question for the jury. *Den* v. *Sinnickson,* 9 *N. J. L.* 149;

*Street* v. *Griffiths,* 50 *Id.* 656. Unless, of course, a court question is presented by admitted or uncontroverted facts. See *Dicksinson* v. *Erie Railroad Co., supra.*

It would serve no useful purpose to quote from the other testimony in the case. From what has been said, sufficient appears to show that a court question was not presented, as matter of law, but a question of fact for the jury.

At the conclusion of the testimony the court observed to the jury that they might return their verdict in favor of the plaintiff, or might return a verdict of guilty, which he afterwards modified by an observation to the jury that they might return their verdict of guilty, with a verdict of six cents damages. The jury returned a verdict of guilty in favor of the plaintiff and against the defendant, and assessed the damages at six cents. Whereupon, judgment was entered that the plaintiff do recover against the defendant the possession of the whole of the property mentioned and described in the complaint, and six cents damages, together with costs.

The defendant's ground of appeal is that the trial court directed a verdict in favor of the plaintiff, whereas it should have denied the motion for such a direction, and should have submitted the case to the jury upon the questions involved in the issue.

The defendant-appellant claims that the verdict directed was as to that part of the premises described in the amended answer, and that the judgment was erroneously entered by the clerk for the whole of the premises described in the amended complaint, and was not in accordance with the court's direction. An inspection of the transcript in the state of the case, however, shows that the judge made no such limitation, but gave his direction in the language hereinabove stated. However, in our view of the case, it is immaterial whether the judgment as entered is correct or erroneous, as it must be set aside and a new trial granted.

We have not overlooked the fact that in his amended answer the defendant avers that he defends the action as to *part* only of the premises claimed in the complaint (describing that part). The verdict, however, finds the de-

fendant guilty generally, as directed by the court. There is no finding as to a part, and the judgment entered is, that the plaintiff recover of the defendant the possession of the *whole* property mentioned and described in the complaint. Assuming, though not considering, that it was error in the judge not to notice the disclaimer, as it is called, and not to instruct the jury to omit finding for the plaintiff that portion of the premises as to which defendant says he did not defend, the question is not available here, because it is not made a ground of appeal, or, if it may be said to be included in the single ground filed, namely, that the court should have denied the motion for direction and submitted the cause to the jury, this question was not argued.

Nor have we overlooked the fact that counsel for defendant-appellant concludes his brief with argument that never should have been made. He appeals to the court to reverse the judgment because he says that if affirmed, re-adjustment must be made at the cost of a large sum, and of discomfort and jeopardy to the property and business of defendant; that, even admitting plaintiff's claim, the wall could be used by agreement between them as a party wall, but plaintiff seems to rather resort to her alleged strict legal claim of complete possession; that the whole attitude of the plaintiff seems to be arbitrary and to cause the defendant incalculable damage; that the serious result of the trial to the defendant is therefore apparent.

This is plainly an appeal to the sympathy of the court. And counsel knows, of course, that this court never decides a case on any such theory, but only according to the law of the land, as right and justice demands.

If counsel made any such argument orally at the bar of the court, he would, of course, be immediately stopped, with proper admonition, and, equally, he cannot make any such appeal by way of written argument, without receiving its censure.

The judgment under review herein will be reversed, to the end that a *venire de novo* may issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TREN-
CHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMP-
BELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD,
JJ. 13.