NATIONAL SURETY COMPANY, Plaintiff, *v.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA and Another, Defendants.

First Department, January 13, 1933.

*Stewart Maurice,* for the plaintiff.

*Alfred A. Walter* of counsel [*Walter & Wolff,* attorneys], for the defendant.

SHERMAN, J. The parties have submitted this controversy to this court in the first instance upon an agreed statement of facts.

A certificate of stock for 100 shares of the common capital stock of the Electric Bond and Share Company, a New York corporation, issued to the firm of Otis & Co. as shareholders, was indorsed by them in their firm name in blank, *i. e.,* they signed the customary

assignment upon the stock certificate in blank, which included a power of attorney so as to enable a transfer to be made upon the books of the corporation and a new certificate to be issued upon the application of a transferee. After it was so indorsed, the certificate was delivered to Eastman, Dillon & Co. by Otis & Co., for value. This certificate was stolen from Eastman, Dillon & Co. The thief altered it by erasing the name of Otis & Co. as the shareholder and also their indorsement and by inserting the name of Adolph R. Brownstein as the shareholder, and his purported signature indorses the certificate. Thereafter the altered certificate, which then appeared to have been issued to Brownstein and indorsed in blank by him, was pledged with Stein, Alstrin & Co., a copartnership, at Chicago, Ill., which received it for value in good faith and without notice or knowledge of the theft or alteration.

This controversy is between plaintiff, the insurer of Stein, Alstrin & Co., which has paid to that firm the value of the certificate and has become subrogated to their rights, and which now holds the altered certificate, and defendant, the insurer of Eastman, Dillon & Co., which has become subrogated to their rights. Each insurer claims to be entitled to the certificate and to the shares of stock represented thereby and has requested the transfer agent of the Electric Bond and Share Company to cancel that certificate and to issue to it a new certificate in its place. The transfer agent, the Bankers Trust Company, has refused to respond to the demand of either, but is willing to abide in the matter by the decision of the court which may finally decide this submitted controversy.

It should be added that Otis & Co. have executed and lodged with plaintiff a further and separate assignment in blank with power of attorney in respect to the certificate so as to enable the transfer agent to issue a certificate to whichever party is entitled thereto.

This submission is also executed by the Bankers Trust Company, as well as by plaintiff and defendant, and asks this court to determine which party is entitled to a new certificate, to direct that the original certificate and the additional assignment and power of attorney be delivered to the transfer agent, and to require such transfer agent to issue a new certificate in place thereof, and to adjudge the right to accrued and unpaid past dividends upon the certificate.

The submission accordingly takes on the characteristics of an application for a declaratory judgment, adjudging the rights of the parties and directing the performance of such acts as may be proper thereunder.

It is further stipulated that at all times involved there was and

now is in force in the States of New York and Illinois, the Uniform Stock Transfer Act, which is identical in each State.

Plaintiff contends that because its subrogator, Stein, Alstrin & Co., acquired the certificate in question as pledgee for value in good faith and without notice of any illegality in connection therewith, it became the owner thereof and of the shares represented thereby.

Under the rule as it existed at common law, the true owner of a stock certificate could not be deprived of his title by theft, whether or not followed, as here, by a forgery upon such certificate and the later delivery by the thief to a *bona fide* purchaser. (*Weaver* v. *Barden*, 49 N. Y. 286, 289; *Colson* v. *Arnot*, 57 id. 253. 261; *Knox* v. *Eden Musee Co.*, 148 id. 441, 456.)

The enactment of the Uniform Stock Transfer Act, which was added to the statutes in this State in 1913 (Pers. Prop. Law, art. 6), has not changed that rule. (*Pierpoint* v. *Hoyt*, 260 N. Y. 26; *Manhattan Co.* v. *Morgan*, 242 id. 38, 51; *Barstow* v. *City Trust Co.*, 216 Mass. 330, 333.)

Section 177 of the Personal Property Law, relied upon by plaintiff, was enacted to protect the true owner (Eastman, Dillon & Co., defendant's subrogator) against the contention now advanced by plaintiff. That section reads as follows: "Alteration of certificate does not divest title to shares. The alteration of a certificate, whether fraudulent or not and by whomsoever made, shall not deprive the owner of his title to the certificate and the shares originally represented thereby, and the transfer of such a certificate shall convey to the transferee a good title to such certificate and to the shares originally represented thereby."

The word " transferee," as used in that section, means, of course, the transferee from the actual owner, not from the thief. The true owner may, though his certificate has been stolen, require the issuance of a new certificate under the provisions of section 178 of that statute. The transferee may do likewise when armed with a separate assignment and power of attorney executed by the shareholder of record. (*Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259, 264.) In compelling recognition by the corporation of him as a stockholder, he is merely perfecting his title to the stock. (*Rice* v. *Rockefeller*, 134 N. Y. 174.) Indeed, the corporation may be held liable to him for making a wrongful transfer. (*Mackenzie* v. *Engelhard Co.*, 266 U. S. 131, 143; *Nowy Swiat Pub. Co.* v. *Misiewicz*, 246 N. Y. 58, 61.) Upon the issuance of a new certificate in place of a certificate bearing a forged power of attorney, the corporation is not thereby relieved from its obligation to the true owner " because he cannot be deprived of his property without any

consent or negligence of his." (*Moores* v. *Citizens' Nat. Bank of Piqua*, 111 U. S. 156, 165, 166.) The Stock Corporation Law (§ 75) contains provisions for compelling a domestic corporation, at the instance of the shareholder, to issue a new certificate in lieu of one that has been lost or stolen. (*Matter of Ostrander*, 206 App. Div. 362.) The transferee's right to dividends is likewise conserved.

" Ordinarily a corporation may continue to pay dividends to the person registered on its books as the owner of the stock. (Personal Property Law, section 164.) It may not do so after a transferee from the registered owner has not only given notice of such transfer but has demanded that new certificates be issued to him." (*Turnbull* v. *Longacre Bank*, 249 N. Y. 159, 166.)

Upon the stipulated facts, the receipt of that altered certificate by plaintiff's subrogator gave them no better rights than Brownstein had, regardless of the fact that their acts were in good faith. (*Graves* v. *American Exchange Bank*, 17 N. Y. 205, 208; *People* v. *Bank of North America*, 75 id. 547, 563, 566.)

It is argued by plaintiff that its claim of title actually rests upon the genuine indorsement of the record owner, Otis & Co. The fact is, however, that Stein, Alstrin & Co. did not rely, and could not have relied, upon that original indorsement, for it was not on the certificate when received by them. They relied upon the fraudulent and forged indorsement to their deception. " Forgery can convey no power nor transfer any rights." (*Telegraph Co.* v. *Davenport*, 97 U. S. 369, 371.) As stated in *Colson* v. *Arnot* (*supra*, at p. 262): " It cannot be the policy of the law to facilitate the free circulation of forged, altered or mutilated paper. The purchaser of such paper must take the risk of its genuineness."

The subsequent disclaimer of interest by Otis & Co. under the new and separate assignment is of no avail to plaintiff. Otis & Co. dealt with Eastman, Dillon & Co., and when they sold the certificate to the latter, they parted with all their right and title in such certificate. Any act performed by them thereafter could not affect the rights of these litigants. (*Cushman* v. *Thayer Mfg. Jewelry Co.*, 76 N. Y. 365, 372.)

In Massachusetts, which has likewise adopted the Uniform Stock Transfer Act (Section 41 thereof being the same as section 177 of our statute), it was held that one who acquires the certificate for value after the name of the shareholder and the indorsement have been fraudulently erased, as here, acquired no title. The court construed that section as not aiding a purchaser from a thief. (*Place* v. *Chaffee*, 251 Mass. 508, 511.) In that case the facts were very like those here stipulated, the difference being that the

name of the indorsee which had been filled in had been erased, whereas here the indorsement was in blank. The principle is that one who takes a stock certificate after theft, alteration and forgery, following obliteration of the genuine signature, obtains no title as against the true owner. (*Donaghue* v. *DiGiorgio Fruit Corp.*, 225 App. Div. 81.) The same result was reached in *Crichton* v. *Louisiana Oil Refining Co.* (144 La. 649) where the Uniform Stock Transfer Act is likewise in force.

The result would be otherwise, of course, if negotiable bonds, being promises for the payment of money to bearer, were stolen. (*Gruntal* v. *U. S. Fidelity & Guaranty Co.*, 254 N. Y. 468; *Pratt* v. *Higginson*, 230 Mass. 256.) It has been said that stock certificates, when indorsed in blank, possess some of the attributes of negotiability (*Union Trust Co.* v. *Oliver*, 214 N. Y. 517, 523; *People's Trust Co.* v. *Smith*, 215 id. 488, 494), but that expression has been generally used in cases where the owner became estopped by his conduct or negligence. In such cases there were present facts or circumstances from which it could fairly be concluded that the true owner was estopped by some act or omission from claiming title as against the *bona fide* purchaser or pledgee who took without notice of the infirmity. (*Jarvis* v. *Manhattan Beach Co.*, 148 N. Y. 652, 659; *McNeil* v. *Tenth National Bank*, 46 id. 325, 329; *Baker* v. *Davie*, 211 Mass. 429, 436; *National Safe Deposit Co.* v. *Hibbs*, 229 U. S. 391.) But a certificate of stock, not calling for the payment of a sum of money, is not essentially a negotiable instrument. (Neg. Inst. Law, §§ 20, 24; *Pratt* v. *Higginson, supra; Treadwell* v. *Clark*, 73 App. Div. 473.) "A stock certificate is but an evidence of title to the property right which its owner has in the corporate stock." (*Pierpoint* v. *Hoyt*, 260 N. Y. 26, 28.)

The decision in *Turnbull* v. *Longacre Bank* (249 N. Y. 159) is relied on by plaintiff. Here the so-called negotiability of the certificate had been destroyed by the erasures and forgeries. There the stock certificates were sold by plaintiff's messenger to whom they had been intrusted after they had been indorsed in blank, but there was no obliteration or forgery. While such alterations do not divest the true owner of his title to the certificate or to the shares represented thereby (§ 177), nevertheless the attributes of negotiability are taken away (*Colson* v. *Arnot, supra*); the certificate in its changed aspect is no longer truly indorsed in blank. (*Meyer* v. *Huneke*, 55 N. Y. 412, 419.)

An examination of the other pertinent sections of the Personal Property Law demonstrates beyond question that defendant Indemnity Insurance Company of North America should be held to be the owner of the certificate.

Section 162 provides how title to shares of stock may be transferred. When the certificate was stolen from Eastman, Dillon & Co., " the person appearing by the certificate to be the owner of the shares represented thereby " was Otis & Co. No one other than that firm could transfer title thereto. They had assigned all of their rights to Eastman, Dillon & Co., to whom they had delivered the certificate. Section 183 defines " delivery " as " voluntary transfer " of possession to make delivery. There must be an intention to make delivery. (*Irving Trust Co.* v. *Leff*, 253 N. Y. 359, 363.) Of course, there was no delivery here by Eastman, Dillon & Co. Nor does section 166 provide for the delivery of a certificate bearing a false and forged indorsement. To effect a valid transfer of a certificate of stock, there must be a voluntary parting with such certificate.

If Stein, Alstrin & Co. had been sufficiently cautious in their dealings with the possessor of the altered certificate, they could have ascertained the genuineness of the certificate before purchasing it and for their own complete protection they should have done so. (*Hudson Trust Co.* v. *American Linseed Co.*, 232 N. Y. 350, 362; *Coats* v. *Guaranty Bank & Trust Co.*, 170 La. 871.) In their dealings with that individual the rule of *caveat emptor* applied. (*Clarkson Home* v. *Missouri, K. & T. R. Co.*, 182 N. Y. 47, 61, 65.) The infirmity is a lack of title and it is no excuse that the brokers acted in good faith. (*Casey* v. *Kastel*, 237 N. Y. 305, 312, 314.)

Under the circumstances, the only recourse which Stein, Alstrin & Co. have is against Brownstein or the individual purporting to have been acting for Brownstein, upon whom they placed reliance in acquiring the certificate. They may recover against such person, because, under the statute (§ 172), whosoever transfers the stock certificate warrants its genuineness, that he had a legal right to transfer it and has no knowledge of any fact which would impair the validity of the certificate.

Upon this submission, therefore, judgment must be entered against the plaintiff and in favor of defendant Indemnity Insurance Company of North America, decreeing that it owns the certificate therein mentioned and the shares of stock represented thereby, and is entitled, upon surrender thereof together with the new separate assignment and power of attorney executed by Otis & Co., to a new certificate in place of such certificate, and directing plaintiff to deliver the certificate and separate assignment and power of attorney to the Bankers Trust Company, and further directing the Bankers Trust Company thereupon to issue a new stock certificate to defendant insurance company in place and stead

thereof, and it is further adjudged that said defendant is entitled to all accrued and unpaid past dividends upon said surrendered certificate, with costs to said defendant against the plaintiff.

FINCH, P. J., MARTIN, O'MALLEY and TOWNLEY, JJ., concur.

Judgment directed in favor of the defendant Indemnity Insurance Company of North America, as indicated in opinion, with costs. Settle order on notice.