44 N.J. Super. 227 (1957)
130 A.2d 55
MARGARET PIROZZI MANNA, ET AL., PLAINTIFFS-RESPONDENTS,
v.
GIOVANNI PIROZZI, ETC., ET AL., DEFENDANTS-APPELLANTS, AND PIROZZI HOLDING COMPANY, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1957.
Decided March 15, 1957.
*229 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Russell Fleming argued the cause for plaintiffs-respondents.
Mr. Michael C. Alenick argued the cause for defendants-appellants.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Appeal is taken by the defendants, Giovanni (sometimes referred to as John) Pirozzi, his four sons John, Jr., Victor, Frank and Joseph, and the Asbestos Transportation Co., Inc., a New Jersey corporation, from a judgment of the Superior Court, Chancery Division, relating to the ownership of 197 shares of stock in that corporation. The claimants to the stock are: on the one hand, the two plaintiffs, administratrices with the will annexed of Giuseppi Pirozzi, a brother of Giovanni, who resided in Italy from 1928 until his death in 1950 (except for some time during 1932-1934); and, on the other hand, the four sons mentioned, in whose names the stock presently stands and who base their claim on a power of attorney signed by Giuseppi in Italy in 1939.
The 197 shares were acquired by Giuseppi at the time the corporation was organized, but they were transferred out of his name, allegedly in 1941, as follows: 100 shares into the name of Giovanni as trustee for Victor, and 97 shares into the name of Giovanni as trustee for John, Jr. In 1949 Giovanni, as trustee, purported to transfer these shares into the names of his four sons individually. By reason of the *230 fact that he had married one of the daughters of his brother Giuseppi, his four sons are at the same time Giuseppi's grandsons and nephews. Plaintiffs claim that, notwithstanding the transfers referred to, Giuseppi owned the stock at his death, and Judge Schettino for the Chancery Division upheld their claim. The very thorough pretrial order, prepared by Judge Howard Ewart, has been of much service to the Chancery Division and to this court as well.
Passing one of the questions argued here, we shall assume (as defendants contend) that the power of attorney cannot be impeached because of any informality in its execution. That brings us to the only other question on which stress has been placed, largely a factual matter, namely, whether by this power, which appoints Giovanni as attorney in fact, Giuseppi intended to authorize the stock to be transferred to Giovanni as trustee as above stated.
A study of the power itself makes it fairly evident, we think, that it was not designed for the accomplishment of any donative purpose. Giuseppi gave his brother authority (if we may abbreviate the terms of the instrument) as follows:
"(1) To demand, sue for * * * moneys * * * and chattels * * * due * * * me * * *; (2) To sell and dispose of any shares of stock, bonds or securities that I now hold or may hereafter hold in any business corporation in the United States and to execute such transfers or assignments that may be necessary to assign my said shares of bonds (sic), stocks or securities to the purchaser thereof; (3) To * * * endorse any promissory note or other negotiable instrument payable to me * * *." (Italics added).
The tenor of the entire instrument indicates that it was a business document; moreover clause (2), the provision on which defendants rely, seems definitely to contemplate a sale, not a donation, of the stock. No power, unless it contains very clear language on the subject, should be construed as having invested the attorney with authority to appropriate to himself his principal's assets or to give them away. Von Wedel v. McGrath, 180 F.2d 716, 718 (3 Cir. 1950), opinion of Judge McLaughlin; Mechem, Outlines of Agency § 41 *231 (1952); cf. Restatement, Agency, § 39. It should not be overlooked in connection with these and other aspects of the case, that when a person undertakes to act as an agent, he assumes the obligations of a fiduciary. Scott, Trusts (2d ed.), § 8; Restatement, Agency, § 13.
It is rather significant that the defendants have come forward with no really satisfactory proof as to why Giuseppi was asked to sign this power which obviously had to do with some business affairs of Giuseppi (or why a like power was given by him in 1949, when the 1939 power was lost  or why a power was given by him in 1928, which contained no express reference to stock). Would such proof have been damaging to defendants' case? On cross-examination, when Giovanni was asked why he had wanted the power, he testified shortly: "I said, Mr. Weiss [Giovanni's attorney], I want power to transfer the stock. That's all." It seems hardly credible that an attorney would draw this power with its miscellaneous objectives, solely for the purpose of authorizing Giovanni to transfer or give away the stock.
Defendants, conscious doubtless that their contentions lacked plausibility, sought at the trial to establish that Giovanni took over the stock in 1941 in settlement of moneys owed him or the Asbestos Transportation Co. Inc., amounting to $84,000 or more, as a result of shipments of merchandise to Giuseppi (or the Pirozzi Brothers) in Italy, largely between 1928 and 1931. The claim was that Giuseppi wrongfully appropriated the proceeds of these shipments to his own purposes. However Judge Schettino rejected the claim, and since on the appeal defendants have very little to say as to the factual bases for the claim, we see no reason to review them.
In the will made by Giuseppi in 1945 (which has been sustained by the Tribunal of Naples, Italy, and on which ancillary letters were issued to plaintiffs by the Somerset County Surrogate's Court), he solemnly declares that he is possessed of the 197 shares, which he bequeaths: 100 shares to the four sons of Giovanni, 36 shares to each of the plaintiffs, Giuseppi's two surviving daughters, and 25 shares to Giuseppi's *232 second wife whom he had married in Italy between 1940 and 1945. Three months after the will was made, Giuseppi wrote one of the plaintiffs telling her that he still owned the 197 shares, never having "ceded" or sold them to any one, including Giovanni; and that she was not to heed any gossip to the contrary. This letter was written four years after the stock was allegedly transferred out of his name, pursuant to the power given by him. One circumstance, which impairs the defendants' case in every aspect of it, is that they do not assert that they or any of them ever advised Giuseppi (except perhaps in 1950, just before he died) of the transfer of the stock out of his name.
Defendants rely upon a letter from Giuseppi written in 1950, three months before his death, addressed to the four boys which they, without success, have tried to have probated, or rather sustained, by the Italian courts as a holograph (we are told that the matter is presently pending before an appellate Italian court). The letter does not purport to bequeath or devise any property. On the contrary, it asserts: "As you well know I own nothing." We are concerned with the letter, not as an instrument of testamentary disposition, but only insofar as it may furnish us with some evidence of Giuseppi's state of mind. Judge Schettino gave little credence to the letter; he held it was indicative merely of
"a disturbed family situation, a man who was well advanced in years who was being pestered by different factions of his family."
Giovanni was in Italy at the time. It is to be observed that though Giuseppi declares in the letter "I own nothing," the fact seems to be that (apart from the stock), he had, as Giovanni testified, a "four room house" which he had devised to his second wife in the 1945 will.
Here is a portion of the testimony which Giovanni gave on cross-examination:
"Q. Why, Mr. Pirozzi, was it that if this [1945] will was giving property that he didn't own, the 197 shares of stock; why was it, Mr. Pirozzi, that if you say he didn't have anything to will, why *233 was it that you were trying to stop [the probate of the 1945 will in Italy by having the 1950 letter sustained apparently as a revocatory instrument]?
A. I stop the will on account of the property. I stop the will and the stock, too.
Q. Oh, the stock, too? A. Yes.
Q. Although you knew at that time that he didn't own the stock.
A. I know that time he no own the stock. He knows it, too, before he die. He don't own the stock.

* * * * * * * *
Q. I am asking you why you rushed down and stopped the [1945] will when it didn't give anything? A. * * * I have to stop.

* * * * * * * *
Q. And now you say you want to appeal to Rome? A. Yes. And I will appeal to ____ ____ this case."
The weight to be given the letter  when it is balanced off against the 1945 will, the letter written in that year and the remaining proofs in the case  depends, in some measure, upon the credit to be accorded Giovanni's testimony, and as to whether indeed he was telling "the whole truth." Without repeating Judge Schettino's censurious comments upon him (as to which we see no reason to differ), we may simply say that there is no sufficient basis for interfering with the finding that Giuseppi did not intend by the 1939 (or the 1949) power to authorize the transfer of the stock to Giovanni as trustee.
The last point raised by defendants (to which in fact counsel gave rather slighting attention at the argument) is that plaintiffs' cause of action is barred by the statute of limitations. N.J.S. 2A:14-1. The action was commenced in 1952. Defendants claim that the stock was transferred out of Giuseppi's name in 1941; and we shall assume this to be so, even though we have noticed that the United States documentary stamps attached to the stock book in connection with the transaction are of the "Series 1948." The stamps may have been purchased after the transfer was effected.
We have already decided that Giuseppi did not authorize the transfer of the stock to Giovanni as trustee or to the latter's sons; and from that, it follows (since none of the transferees are purchasers for value without notice, N.J.S.A. 14:8-33) that the beneficial title of the stock remained in *234 Giuseppi until his death. We propose next to consider whether the legal title likewise remained in him until his death. If he never lost the legal and equitable title, the statute of limitations of course does not preclude this action to recover it.
Legal title could have passed to the defendants by virtue either of the Uniform Stock Transfer Act (N.J.S.A. 14:8-23 et seq.), or perhaps the doctrine of adverse possession. No reference is made by the parties to that doctrine, and we therefore do not pass upon it. As to whether, in order to establish adverse possession, there must be clear proof (Willomay Holding Co. v. Peninsula Land Co., 36 N.J. Super. 440, 443 (App. Div. 1953)) of, inter alia, possession of such notoriety as would serve to alert a person in the owner's position, see Burrichter v. Wishnefsky, 103 N.J.L. 340 (E. & A. 1927); Plaza v. Flak, 7 N.J. 215, 220 (1951); Predham v. Holfester, 32 N.J. Super. 419, 424 (App. Div. 1954). For cases dealing with this aspect of the doctrine, in connection with the adverse possession of negotiable choses in action, see Lightfoot v. Davis, 198 N.Y. 261, 91 N.E. 582, 584, 29 L.R.A., N.S., 119 (Ct. App. 1910); Commercial Union Ins. Co. v. Connolly, 183 Minn. 1, 235 N.W. 634, 636 (Sup. Ct. 1931); Brown, Personal Property 38 (1955); cf. 3 American Law of Property 836 (1952). Query, whether in view of the Uniform Stock Transfer Act, title to a stock certificate can pass through adverse possession.
The highly technical question we are then left with, is whether, by virtue of the uniform act, the legal title to the stock was transferred in 1941 to Giovanni as trustee. The transfer from the trustee to his sons in 1949 need not detain us, because, as already stated, the sons are not purchasers for value without notice; and this action, insofar as the 1949 transfer is involved, was brought well within the period of the statute of limitations. N.J.S.A. 14:8-31, 14:8-33. We are concerned solely with the question whether Giovanni as trustee acquired a legal title in 1941.
Under the uniform act, "legal" (N.J.S.A. 14:8-24; Martindell v. Fiduciary Counsel, Inc., 133 N.J. Eq. 408, *235 415 (E. & A. 1943)) title to a certificate of stock, and the shares represented thereby, may pass only by delivery of the certificate under certain specified circumstances with which we are not now concerned. N.J.S.A. 14:8-27. Besides, in order to satisfy the statute, the delivery must be made to the transferee (or his agent)  that is, in this case, to Giovanni as trustee  or in any event it must be made pursuant to the transferor's intentions. Besson v. Stevens, 94 N.J. Eq. 549, 563 (Ch.), affirmed 94 N.J. Eq. 568 (E. & A. 1923); Pattberg v. Gott, 102 N.J. Eq. 371, 379 (Ch. 1928); Parker v. Colonial Building-Loan Ass'n, 111 N.J. Eq. 49, 51 (Ch. 1932).
A delivery under the Uniform Stock Transfer Act involves two things: an act, or perhaps some constructive act (Annotation, 23 A.L.R.2d 1191, 1196 (1952)), of tradition, transferring the possession of the certificate to the transferee; and an intention to make such a transfer. We shall assume that the act transferring the possession of the certificate to Giovanni, as trustee, was performed. In that connection, it might be noted, in passing, that all the certificates ever issued by this corporation had been kept (according to the testimony) "physically in the books," or at least in the corporation's office; "the individual stockholders did not pick up their shares and take them home."
But here there was no intention on the part of Giuseppi to turn over the possession of the certificate to Giovanni as trustee or to anyone else, except pursuant to a sale. "Delivery" is defined for the purposes of the Uniform Stock Transfer Act (N.J.S.A. 14:8-24) as a "voluntary transfer of possession from one person to another." (Italics added) Cf. N.J.S.A. 7:1-2; 57:1-1; 46:30-1. Here there was no voluntary delivery to the transferee. The matter of intention is vital to a delivery. Modern Industrial Bank v. Taub, 134 N.J.L. 260, 266 (E. & A. 1946), dealing with an alleged delivery of a negotiable instrument as between the parties, and pointing out, incidentally, that the handing over of physical possession, subject to a condition precedent, is not a delivery until the condition is fulfilled. An intent *236 to authorize an agent to deliver stock in order to effect a sale is not an intent to authorize what must here be taken to be a donative delivery. It is to be observed that we are not dealing with (and do not pass upon) the rights of a third person who enters upon some course of conduct relying on the acts of the owner's agent; this is the case merely of the agent himself assuming to deliver the stock to himself as trustee.
The requisite intention being lacking, there was no delivery to Giovanni, as trustee; and that being so, legal title did not vest in him. Leff v. N. Kaufman's, Inc., 342 Pa. 342, 20 A.2d 786, 790, 139 A.L.R. 267 (Sup. Ct. 1941); cf. Turnbull v. Longacre Bank, 249 N.Y. 159, 163 N.E. 135, 137 (Ct. App. 1928); National Surety Co. v. Indemnity Ins. Co., 237 App. Div. 485, 261 N.Y.S. 605, 612 (App. Div. 1933); Uniform Commercial Code, § 8-309, Comment. Somewhat similarly, title to a negotiable instrument does not pass, as between the immediate parties, until there is an authorized delivery. Introcaso v. Orrok, 124 N.J.L. 4, 5 (Sup. Ct. 1940); N.J.S.A. 7:2-16; Beutel's Brannan, Negotiable Instruments (7th ed.), 360.
Moreover, the transfer of the stock on the books of the corporation into the name of Giovanni as trustee and the issuance of new certificates to him did not confer upon him the legal title; for there was no voluntary delivery to him of the old certificate, and the statute makes such a delivery an indispensable condition precedent to the transfer of the legal title. Shinsaku Nagano v. McGrath, 187 F.2d 753, 757 (7 Cir. 1951); cf. Besson v. Stevens, 94 N.J. Eq. 549, 563-567 (Ch.), affirmed 94 N.J. Eq., at page 568 (E. & A. 1923); W.G.W. Distributing Co. v. Lowy, 119 N.J. Eq. 372, 374 (E. & A. 1936); First Nat. Bank in Fort Lee v. Englewood, etc., Ass'n, 124 N.J. Eq. 360, 365-368 (Ch. 1938); Legisl., 32 Col. L. Rev. 894, 896 (1932).
The full title to the stock, both legal and equitable, therefore remained in Giuseppi until his death. That being so, the statute of limitations does not bar this action. We therefore need not consider another approach to this issue, *237 namely, whether it clearly appears that Giuseppi and the plaintiffs were prevented, by the act of the defendants, from bringing an action for the recovery of the stock until the time this action was started or until a reasonable time prior thereto, and whether the defendants accordingly are to be charged with having fraudulently concealed the cause of action and thus are precluded from setting up the statute of limitations. Teas v. Third National Bank & Trust Co., 125 N.J. Eq. 224, 228, 229 (E. & A. 1939).
Affirmed.