82 N.J. Super. 382 (1964)
197 A.2d 706
THE CHASE MANHATTAN BANK, AS ADMINISTRATOR WITH THE WILL ANNEXED OF NORMAN E. OLIVER, DECEASED, PLAINTIFF, STATE OF NEW JERSEY, BY ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, INTERVENOR,
v.
HARRY W. O'CONNOR, AS EXECUTOR OF THE LAST WILL OF HARRY L. O'CONNOR, DECEASED, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 6, 1964.
*383 Mr. William H. Osborne, Jr., for plaintiff (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Charles J. Kehoe, Deputy Attorney General, for intervenor (Mr. Arthur J. Sills, Attorney General, attorney).
Mr. Wilbur M. Rush, for defendants O'Connor and Sellin.
*384 Mr. Ira C. Moore, Jr., for defendants H.C.L. Corp. and Universal Match Corporation (Messrs. Whiting, Moore, Hunoval & Herman, attorneys).
MATTHEWS, J.S.C.
Plaintiff instituted this action pursuant to N.J.S. 2A:16-50 et seq., for a declaratory judgment determining that it is entitled to certain shares of common stock of defendant H.C.L. Corporation (hereinafter referred to as Corporation), a corporation in dissolution, and stock of the defendant Universal Match Corporation (hereinafter referred to as Universal), and to the proceeds of redemption of certain preferred stock of Corporation and to the dividends declared on the shares of the common stock of Corporation and Universal. Plaintiff is the administrator c.t.a. of the estate of Norman E. Oliver, deceased. Defendants O'Connor and Sellin filed a cross-claim with their answer in the action asserting that Charles H. O'Connor was the owner of the aforementioned shares of stock, proceeds of redemption and dividends involved in this action, and further claiming that such property is payable to them in their respective fiduciary capacities. The State of New Jersey intervened in the action seeking a judgment escheating the shares of stock, the value of the proceeds of redemption, and dividends accrued on those shares owned by Jacques L. Boisse standing in the name of Charles H. O'Connor. Defendants Universal and Corporation have filed an answer which in effect impleads the shares of stock, proceeds, and dividends.
The shares of stock of the corporation with which we are here concerned were originally issued to Norman E. Oliver and Jacques L. Boisse. Oliver was the president of the corporation. On August 14, 1925 Corporation issued its certificate No. C 242 in the name of Charles H. O'Connor for 375 shares of common stock. The records disclose that these 375 shares had their source as follows: 188 thereof out of 2 certificates for 100 shares each standing in Oliver's name, and 187 thereof out of certificates then standing in Boisse's name. On October 14, 1925 Corporation issued certificate No. C 262 *385 for 690 shares of common stock in the name of Charles H. O'Connor. These shares had their source in a certificate for 690 shares issued June 1, 1925 to Norman E. Oliver.
On August 14, 1925 Corporation issued its certificate No. P 201 for 75 shares of 8% cumulative preferred stock of the corporation in the name of Charles H. O'Connor. These shares had their source as follows: 37 thereof out of a certificate for 500 shares dated May 29, 1925 and issued by the Corporation to Norman E. Oliver, and 38 thereof out of a certificate issued in the name of Jacques L. Boisse. On October 14, 1925 Corporation issued certificates numbered P 221 for 150 shares and P 222 for 5 shares of 8% cumulative preferred stock, each in the name of Charles H. O'Connor. These shares had their source in a certificate for 150 shares dated June 1, 1925 issued in the name of Norman E. Oliver, and a certificate for 5 shares dated June 1, 1925 and issued in the name of Norman E. Oliver. In 1956 and 1957 Corporation redeemed the aforesaid shares of preferred stock issued in the name of O'Connor at the rate of $37.886 per share including dividends. Cash dividends upon the common stock have been paid only for the years 1958 through 1961. In 1959 a one-for-one common stock dividend was declared and paid by the Corporation. Pursuant to that declaration, a certificate for 1,065 shares of common stock was issued by Corporation in the name of Charles H. O'Connor and has been retained in its possession since the issue date.
In 1961 Universal purchased all the assets of Corporation, and as the purchase price therefor paid and delivered to Corporation 1 3/4 shares of Universal common stock for each outstanding share of Corporation's common stock. Upon dissolution of Corporation, liquidating dividends for distribution of the shares of Universal common stock and of additional stock received as a stock dividend were declared. Pursuant thereto, Universal transferred and delivered to Corporation 3,791.4 shares of Universal common stock by certificates in the name of Charles H. O'Connor, which Corporation has at all times retained in its possession. Corporation has also retained *386 in a separate bank account the proceeds of sale of the fractional shares of Universal common stock and cash dividends paid by Universal on those shares standing in the name of O'Connor.
Both Oliver and Boisse are dead. Charles H. O'Connor died intestate on February 13, 1936, leaving as his next of kin Robert K. O'Connor, W. Scott O'Connor, Harry L. O'Connor and James O'Connor, his brothers. Robert K. O'Connor, W. Scott O'Connor, Harry L. O'Connor and James O'Connor each died testate leaving a last will which was admitted to probate. Defendant Marguerite C. Sellin was named executrix under the wills of Robert K. O'Connor and W. Scott O'Connor, respectively. Defendant Harry W. O'Connor was named executor under the will of Harry L. O'Connor. Defendant Elizabeth O'Connor was named executrix under the will of James O'Connor. Each executor and executrix so named has duly qualified and continues to act in his or her respective capacities. All of the certificates of stock standing in the name of O'Connor were found well after the death of Oliver, Boisse and O'Connor in a steel file safe in the business offices of Corporation. This safe had been the property of Corporation since the time of its organization in 1924, and had been moved successively from each of the offices maintained by Corporation during its existence.
Under these facts plaintiff contends that the shares of stock represented by the certificates in question, having their source in the original Oliver shares, are the property of Oliver's estate, both legally and equitably. No claim is asserted by plaintiff as to the certificates which had their source in certificates for shares originally owned by Boisse. It is as to these latter shares that the State of New Jersey claims its right of escheat. Defendants O'Connor and Sellin contend that all of the shares in question were the property of Charles H. O'Connor and, therefore, properly deliverable to them to be administered as part of their respective estates.
Plaintiff argues that since the certificates representing the shares of stock issued in the name of Charles H. O'Connor *387 were found in the possession of Corporation, no delivery thereof can be said to have been effected to O'Connor and, consequently, title thereto never left Oliver. In support of this argument plaintiff relies on R.S. 14:8-27 (the Uniform Stock Transfer Act, concededly governing the transfers here) which provides in part:
"Title to a certificate and to the shares represented thereby can be transferred only:
a. By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or
b. By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. The assignment or power of attorney may be either in blank or to a specified person."
Defendants O'Connor and Sellin contend that since the above numerated certificates were standing in the name of Charles H. O'Connor in the year 1925, plaintiff and the State, in order to prevail, must bear the burden of establishing by the preponderance of the evidence that there had been no delivery of the certificates to O'Connor by the original owners thereof. They concede, however, that in the absence of a legally sufficient delivery as required by R.S. 14:8-27, no effectual transfer of legal title to the shares was possible. These defendants argue that where, as here, plaintiff's and the State's claims rest entirely upon a negative allegation, i.e., a nondelivery of the stock certificates, they are not relieved of the onus probandi by reason of the form of allegation or the inconvenience of proving a negative. Where a negative is averred in a pleading, or a party's case depends upon the establishment of a negative, and the means of proof and fact are equally in the control of each party, the burden of proof is upon the party averring the negative.
In point of fact, neither plaintiff and the State, nor defendants O'Connor and Sellin, have any knowledge of the nature of the transactions, if any, between Oliver and O'Connor and *388 Boisse and O'Connor which precipitated the transfers of the shares heretofore indicated. Plaintiff relies on Corporation's continued possession of the shares in question, and defendants O'Connor and Sellin rely upon the transfer of the shares on the transfer books of Corporation from the names of Oliver and Boisse to the name of O'Connor.
There can be no dispute that title to a stock certificate and the shares of stock represented thereby may be transferred only by delivery of the certificate indorsed in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby. In Manna v. Pirozzi, 44 N.J. Super. 227, 235 (1957), the Appellate Division defined such delivery as an act, or perhaps some constructive act of tradition, transferring the possession of the certificate to the transferee accompanied by an intention to make such a transfer. Delivery was defined for the purposes of the Uniform Stock Transfer Act as a "voluntary transfer of possession from one person to another."
In Besson v. Stevens, 94 N.J. Eq. 549 (E. & A. 1923), it was held that delivery, in order to satisfy the Uniform Stock Transfer Law, was required to be made to the transferee or his agent, or in any event, pursuant to the transferor's intention. In the course of this holding the court stated:
"* * * where the transferor delivers nothing to the transferee, but delivers the certificate and assignment to the company, the latter is simply the agent of the transferor to accomplish the delivery to the transferee. That is not done until the delivery of the new certificate to the transferee * * *." (at page 566)
Defendants O'Connor and Sellin contend that plaintiff has failed to show a lack of delivery of the certificates to Charles H. O'Connor, and state further that the existence of O'Connor's name on the transfer books of Corporation as record holder of the shares involved should be construed to indicate the real ownership of the shares. Thus, these defendants point out that the transfer books are maintained pursuant to R.S. 14:5-1; that voting rights are determined by what appears thereon, R.S. 14:10-6; harsh penalties are provided for failure *389 to exhibit these books, N.J.S.A. 14:10-5. They urge that to find title thereby in Oliver and not in O'Connor would necessarily create the implication that Oliver willfully caused the transfer books of Corporation to be falsified by the insertion of the names of persons who did not hold legal title to the shares listed after their names. The bona fide registration of O'Connor's name in the transfer books of Corporation, they argue, presupposes a valid transfer to him.
A provision in a corporate charter or bylaws that stock is transferable only on the books of the corporation is intended merely for the protection and benefit of the corporation, and the title of the holder of the shares is in no wise affected by such a provision. Mount Holly, Lumberton and Medford Turnpike Co. v. Ferree, 17 N.J. Eq. 117, 119 (Ch. 1864); cf. R.S. 14:8-27. The crucial question is whether there was a delivery of the original Oliver and Boisse shares to O'Connor or to someone on his behalf. In answering this question, I must first assume that the shares of stock in question originally belonged to Oliver and Boisse. This assumption is borne out, first, by the certificates of stock themselves and the transfer books of Corporation. Warren Schenck, who appeared as a witness, and who had occupied successively the positions of secretary, treasurer, president and chairman of the board of Corporation, and who had been its legal advisor since its incorporation, testified that at the outset Oliver and Boisse, who were the founders of Corporation, owned all of its original issue of stock.
Turning to the certificates for shares standing in the name of Oliver, which were the source of the shares represented by the certificates standing in the name of O'Connor, it is observed that in the case of both the common and preferred shares, not all of the original certificates were indorsed by Oliver; nor were separate stock powers found with the unindorsed certificates or in the files or records of Corporation. In addition, the backs of some of the original Oliver certificates indicate the transfer of some of the shares represented thereby to persons other than Charles H. O'Connor. *390 Thus, certificate P. 195, representing 500 shares of preferred stock standing in the name of Oliver on May 29, 1925 and containing no indorsement, has an inscription on its reverse side indicating as follows:

 "shares transferred to:
 33  Enders McVoorhees  Certf. P. 199  8/14/25
 50  Minnie I. Meacham  " P. 200  "
 37  Charles H. O'Connor  " P. 201  "
 380  Norman E. Oliver  " P. 204  "
 ____
 500"

These facts indicate to me that it was most probably Oliver, and not O'Connor, who delivered the original certificates to the office of Corporation for the purpose of effecting the transfer of some of the shares represented by the certificates to O'Connor. This inscription has been identified by the witness Schenck as being in the handwriting of one Louise S. Mack, the secretary to Norman E. Oliver. This finding of non-delivery of the original shares by Oliver to O'Connor, together with the undisputed fact that the certificates representing the shares transferred to O'Connor were in the possession of Corporation from the date of their issue to the date of their discovery long after the death of both Oliver and O'Connor, leads to only one conclusion: that neither legal nor equitable title to the shares was vested in O'Connor at any time. Manna v. Pirozzi, supra; Besson v. Stevens, supra; R.S. 14:8-27.
The conclusion which I have reached is in no wise affected by R.S. 14:8-36 cited to me by the defendants. This section, which provides as follows:
"An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer, and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts."
deals with enforceable executory engagements involving the transfer of shares of stock. As I have mentioned heretofore, *391 none of the parties hereto have any knowledge of the nature of the transaction which existed, if any existed at all, between Oliver and O'Connor (or Boisse and O'Connor) and which brought about the transfer of the shares in question on the books of Corporation. In order to invoke the provisions of R.S. 14:8-36, there must be established the basis out of which the promise sought to be carried out arose. See e.g., In re Vanatta's Estate, 99 N.J. Eq. 339 (Prerog. 1926). I find no basis for concluding under the evidence adduced at trial that there existed between Oliver and O'Connor or Boisse and O'Connor any relationship which equity would regard as enforceable or otherwise remediable.
I direct that judgment as to the shares standing in the name of Charles H. O'Connor on the books of Corporation which had their source in the shares originally standing in the name of Norman E. Oliver, be deemed the property of plaintiff as the personal representative of Norman E. Oliver, together with all monies representing the redemption of such shares, the sale of fractional shares and dividends paid on said shares.
I also direct that the shares standing in the name of Charles H. O'Connor which had their source in the shares originally standing in the name of Jacques L. Boisse, together with all monies paid in redemption of such shares, the sale of fractional shares and dividends paid on such shares, shall under the provisions of N.J.S. 2A:37-13 escheat to the State of New Jersey, since said property has been unclaimed for more than 14 successive years and the whereabouts of Jacques L. Boisse has been unknown for more than 14 successive years.
A judgment in accordance with this opinion may be settled on notice to all parties or by their consent.